**Earl FORREST, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. SC 89343.**

Supreme Court of Missouri,
En Banc.

June 16, 2009.

Rehearing Denied Sept. 1, 2009.

---

Melinda K. Pendergraph, Office of Public Defender, Columbia, MO, for Appellant.

Chris Koster, Atty. Gen., Andrew W. Hassell, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

## I. Introduction

A jury found Earl Forrest guilty of three counts of first-degree murder and recommended three death sentences. The trial court entered a judgment adopting the jury's recommendation, which this Court affirmed in *State v. Forrest,* 183 S.W.3d 218 (Mo. banc 2006). Forrest's motion for post-conviction relief under Rule 29.15 was overruled by the motion court. He appeals; this Court has exclusive jurisdiction. Mo. Const. art. V, sec. 10; order of June 16, 1988. The judgment denying post-conviction relief is affirmed.

## II. Facts

On December 9, 2002, Forrest went to Harriett Smith's house regarding an unresolved agreement. As part of the agreement, Forrest was to introduce Smith to a drug dealer and, in exchange, Smith would purchase Forrest a lawnmower and mobile home. While at Smith's house, Forrest shot and killed Smith and Michael Wells, a visitor, and took a lockbox of methamphetamine.

Forrest injected himself with the methamphetamine once he returned home. When law enforcement arrived to investigate Smith's and Wells' deaths, Forrest initiated a shootout with law enforcement. As a result, Dent County Sheriff Bob Wofford was wounded and Deputy Sheriff Sharon Joann Barnes was killed. Forrest surrendered. He and his girlfriend also were wounded.

Forrest was charged with three counts of first-degree murder, section 565.020,[1] for the deaths of Smith, Wells, and Barnes. A jury found Forrest guilty and recommended three death sentences after finding an aggravating factor for each victim.[2] The trial court's judgment adopted the

---

1. All statutory references are to RSMo 2000, unless otherwise noted.

2. For Smith's murder, the aggravating factors were Forrest committed the murder to receive something of monetary value and the murder was committed while Forrest was engaged in the homicide of Wells. For Wells' murder, the aggravating factor was the murder was committed for Forrest to receive something of monetary value from Smith. For Barnes' murder, the aggravating factor was the murder was committed against a peace officer engaged in her official duty.

jury's recommendation, which this Court affirmed on direct appeal. *Forrest,* 183 S.W.3d 218.

Forrest sought post-conviction relief by a Rule 29.15 motion. The motion court overruled an evidentiary hearing for the majority of the claims. An evidentiary hearing was held for the remaining claims, which were denied by the motion court in a detailed order. Forrest appeals the denial of post-conviction relief.

### III. Standard of Review

■ This Court reviews a post-conviction relief motion for whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). A judgment is clearly erroneous when there is a "definite and firm impression that a mistake has been made" after reviewing the entire record. *Goodwin v. State,* 191 S.W.3d 20, 26 (Mo. banc 2006). A post-conviction relief ruling is presumed correct. *Strong v. State,* 263 S.W.3d 636, 642 (Mo. banc 2008).

### IV. Ineffective Assistance of Counsel

■ Post-conviction relief is granted for ineffective assistance of trial counsel when the movant shows deficient performance by counsel and prejudice. *Goodwin,* 191 S.W.3d at 25. Deficient performance exists when the representation is "below an objective standard of reasonableness." *Id.* Prejudice occurs when a reasonable probability, "sufficient to undermine confidence in the outcome," exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Prejudice in a death penalty case is "a reasonable probability that, but for counsel's deficient performance, the jury would have concluded the balance of aggravating and mitigating circumstances did not warrant death." *State v. Kenley,* 952 S.W.2d 250, 266 (Mo. banc 1997).

■ It is presumed that counsel is effective and that the burden is on the movant to show otherwise. *Goodwin,* 191 S.W.3d at 25. Trial strategy is not a basis for ineffective assistance of counsel. *Id.* An omission is presumed to be trial strategy. *Id.* Trial counsel's decisions made after considering the law and facts and pondering alternative strategies generally are not disturbed by a court on review. *Id.*

### V. Points with an Evidentiary Hearing

Forrest raises seven points alleging ineffective assistance of trial counsel that were addressed in the evidentiary hearing.

#### A. PET Scan

■ Forrest argues the motion court clearly erred in denying the ineffective assistance of counsel claim for failing to obtain a Positron Emission Tomography (PET) scan. Forrest alleges the PET scan would show brain damage, thereby creating a reasonably probability the jury would have imposed a life sentence.

##### 1. Facts

Forrest presented a diminished capacity and lack of deliberation defense at trial. Dr. Smith, a clinical psychologist, testified in the guilt phase that Forrest was diagnosed with dysthymic disorder (long-term depression), cognitive disorder (brain injury or brain damage), and substance dependence or addiction for alcohol and methamphetamine. In the penalty phase, additional evidence of brain damage and substance dependence was presented from Dr. Smith; Dr. Evans, a psychiatric pharmacist; and Dr. Gelbort, a clinical neuropsychologist.

■ Trial counsel decided weeks before trial commenced not to pursue a PET scan, despite considering it earlier. Trial counsel testified she was "one hundred

percent for sure" she would have ordered a PET scan if she could have done so *ex parte* and under seal.[3] Trial counsel also expressed concerns that the PET scan was not guaranteed to provide helpful information and that it might have provided harmful information that would undermine other mitigating evidence.

Forrest underwent a PET scan after he was convicted. Dr. Preston, a nuclear medicine physician, testified the PET scan showed brain damage and chemical injury, which was consistent with Dr. Gelbort's diagnosis of brain damage. Drs. Smith, Evans, and Gelbort testified at the post-conviction hearing that the PET scan results would not have changed their trial testimony, but would have corroborated their testimony or would have been additional data.

## 2. Motion Court's Findings

After hearing the evidence, the motion court found trial counsel was not ineffective for not seeking a PET scan and Forrest was not prejudiced. First, the PET scan and Dr. Preston's testimony was inadmissible because the PET scan results "could not, in and of themselves, demonstrate any connection to Forrest's behavior at the time of the crime" for the diminished capacity defense, and no scientific evidence was presented to show the PET scan "would definitively confirm that Forrest was suffering from a mental disease or defect."

Second, trial counsel had full knowledge of the possible PET scan results and reasonably decided not to seek the scan because an *ex parte* order would not be granted and the results might have undermined the mitigating evidence. Third, Dr. Preston's testimony was cumulative to Drs. Smith's and Gelbort's testimony.

3. An *ex parte* order will not be granted to transport a defendant for a mental examination. *State v. Anderson*, 79 S.W.3d 420, 434

And fourth, Forrest was not prejudiced because of the underlying circumstances and Forrest's mental defects.

## 3. Analysis

The motion court did not err in denying relief regarding the failure to obtain a PET scan. First, the evidence supported the motion court's findings that trial counsel did not order a PET scan for strategic reasons. Counsel's trial strategy is not a basis for ineffectiveness. *Goodwin*, 191 S.W.3d at 25.

Second, the PET scan was cumulative evidence that merely corroborated the testimony of Drs. Smith and Gelbort. The failure to develop or introduce cumulative evidence does not constitute ineffective assistance of counsel. *Id.* at 38.

Third, Forrest was not prejudiced in either phase by the absence of the PET scan. He has failed to show a reasonable probability the jury would have recommended a life sentence after balancing the aggravating and mitigating circumstances.

Forrest failed to show trial counsel's performance was deficient and failed to show he was prejudiced. The motion court's findings are not erroneous. The point is denied.

## B. Medical Records

■ Forrest argues the motion court clearly erred in denying the ineffective assistance of counsel claim for failing to investigate and present available mitigating evidence of medical records. Forrest alleges the medical records show evidence of head injuries not presented at trial and prejudice as a lesser sentence might have resulted.

(Mo. banc 2002); *see also State v. Tokar*, 918 S.W.2d 753, 765 (Mo. banc 1996).

### 1. Facts

The medical records are from hospital visits in the early 1990s for head injuries from being struck by a baseball bat and suicide attempts. The medical records from the baseball bat incident noted Forrest had a "closed head trauma with repair of 8 cm scalp laceration" but did not lose consciousness. Forrest's drug and alcohol use were mentioned in the medical records from the suicide attempts.

Forrest alleges Dr. Gelbort never received the records because at trial he testified Forrest "could have been misreporting" that the baseball bat incident resulted in a brief loss of or alteration in consciousness. Dr. Gelbort testified at trial and at the post-conviction hearing that he reviewed some records and was aware of the baseball bat incident before trial.

Trial counsel testified the medical records were not introduced because it was not a crucial aspect of the case. The baseball bat incident was a part of a drug deal and trial counsel did not feel it was "mitigation friendly" evidence to be presented to the jury. Trial counsel's strategic reason was to avoid a witness testifying about his discussion with Forrest about the incident. Trial counsel also thought Forrest's possible misrepresentation was not the main issue and other experts addressed Forrest's brain injury.

### 2. Motion Court's Findings

The motion court entered four findings on this point. First, the motion court found Drs. Smith, Evans, and Gelbort received the medical records. Second, trial counsel made a reasonable and strategic decision not to admit the baseball bat incident because of the background information. Third, any additional evidence of Forrest's drug use and depression was cumulative to evidence presented at trial by Drs. Smith and Evans. And fourth, Forrest was not prejudiced because the jury rejected the mental health defense and there was not a reasonable probability of a different outcome had the evidence been admitted.

### 3. Analysis

The motion court's findings are supported by the evidence. Trial counsel did not render ineffective assistance of counsel. Trial counsel investigated and presented mitigating evidence of the head injuries to the doctors for review. *See Taylor v. State,* 262 S.W.3d 231, 250 (Mo. banc 2008). The decision not to introduce evidence of the medical records was a strategic decision and trial counsel's decision will not be challenged. *Goodwin,* 191 S.W.3d at 25. The medical records were cumulative to other evidence, and trial counsel is not ineffective for failing to offer cumulative evidence. *Id.* at 38.

Forrest was not prejudiced. He failed to show how the medical records would have impacted the sentence given that the jury had evidence of his brain injuries.

Forrest failed to show trial counsel's performance was deficient and failed to show he was prejudiced. The motion court's findings are not erroneous. The point is denied.

### C. Penalty Phase Witnesses

■ Forrest argues the motion court clearly erred in denying the ineffective assistance of counsel claim for failing to investigate and present mitigating evidence from Forrest's friend, neighbor, and employer. Forrest alleges prejudice in that the mitigating evidence from the witnesses' testimony may have supported a lesser sentence.

### 1. Facts

Anthony Jacobs, Forrest's friend, testified at the post-conviction hearing that Forrest often used drugs and alcohol and

that he was good with children. Trial counsel accidentally became aware of Jacobs when attempting to find Doug Del Mastro, another witness. Curtis Fuller, Forrest's childhood neighbor, testified that Forrest's father yelled at and hit Forrest as a child and that Forrest's father frequently drank. Dennis Smock, Forrest's former employer, testified that Forrest was a hard worker who had to be supervised and that he introduced Forrest to the Mormon Church. Trial counsel testified there was no strategic reason not to call the witnesses at trial.

### 2. Motion Court's Findings

The motion court found trial counsel was not ineffective because the testimony was cumulative to other witnesses and Forrest was not prejudiced in light of the other witnesses and the strength of the case.

### 3. Analysis

The motion court's findings are supported by the record. Trial counsel's performance was not deficient by failing to call Jacobs, Fuller, and Smock in the penalty phase to testify to Forrest's drug and alcohol use, childhood, religion, and that he was good with children. That information was elicited from the penalty phase testimony of Forrest's brother, his former girlfriend's children, and other friends. Trial counsel was not ineffective for not offering the cumulative testimony from Jacobs, Fuller, and Smock. *See Goodwin*, 191 S.W.3d at 38. Forrest was not prejudiced because of the evidence presented and the witnesses did not offer additional information.

Forrest failed to show trial counsel's performance was deficient and failed to show he was prejudiced. The motion court's findings are not erroneous. The point is denied.

### D. Inadmissible Evidence

■ Forrest argues the motion court clearly erred in denying the ineffective assistance of counsel claim for failing to object to the improper and misleading evidence of a knife in Forrest's possession. Forrest alleges the evidence was irrelevant, he was prejudiced, and the death sentence was based on false evidence.

### 1. Facts

When Forrest was handcuffed after he surrendered, law enforcement removed a nine-and-a-half-inch knife from Forrest's belt. A photograph of a knife propped up against a wall was taken and admitted into evidence at trial. At trial, Sgt. Roark inferred the knife recovered from Forrest was different from the knife in the photograph. At the post-conviction hearing, Sgt. Roark testified that he was mistaken at trial and that the knife recovered from Forrest was the same knife as in the photograph. Trial counsel testified there was no specific trial strategy not to object to the knife as it was irrelevant and insignificant.

### 2. Motion Court's Findings

The motion court found that the photograph and testimony regarding the knife was merit less and that counsel was not ineffective. Evidence that Forrest had a knife when he was arrested was admissible to show Forrest's condition and state of mind at that time. The motion court noted that the knife Forrest had on him was the same knife in the photograph. The motion court also found Forrest was not prejudiced based on the evidence presented.

### 3. Analysis

The motion court's findings are supported by the evidence. The record shows Forrest shot Smith and Wells to death over an unresolved agreement and later

shot Deputy Barnes in a shootout. In the context of the case, evidence of the knife was of minimal impact. Although it established that at the time of his arrest Forrest was armed with dangerous weapons, the presence of a knife pales in comparison to Forrest's use of firearms.

Forrest has not established that the evidence was inadmissible, any prejudice from its admission, or a due process violation from the evidence admitted.

Forrest failed to show trial counsel's performance was deficient and failed to show he was prejudiced. The motion court's findings are not erroneous. The point is denied.

### E. Admission of Evidence

■ Forrest argues the motion court clearly erred in denying the ineffective assistance of counsel claim for failing to object to the admission of evidence of Forrest's prior convictions. Forrest alleges that exhibit 60, a certified record from the California Department of Justice of Forrest's arrests and applicable dispositions, was hearsay and included charges that did not result in a conviction and that exhibit 61, a certified record of a prior conviction in California, was not properly certified to be admitted under section 490.130.[4]

### 1. Facts

Exhibit 60 contains Forrest's prior convictions in California from 1973 to 1998.

The custodian of records for the California Department of Justice provided a signed declaration, with the department seal, as keeper of records. Exhibit 61 is the record of Forrest's guilty plea for possession of a concealed weapon in California from 1987 and included three other counts. The record bears the county seal and was signed by the county's chief executive clerk.

In the penalty phase, two police officers from California testified about separate incidents involving Forrest. One officer testified he arrested Forrest in 1994 on outstanding warrants for a narcotics violation and a suspended driver's license, and charged Forrest with possession of a dangerous weapon and possession of a controlled substance. The second officer testified he arrested Forrest in 1996 for possession of a controlled substance and possession of forged notes. After the witnesses testified, the State introduced exhibit 60, specifically noting convictions for drug possession in 1968 and transportation, sale, or manufacture of a controlled substance in 1979, and exhibit 61, specifically noting a conviction for possession of a concealed weapon in 1987. The exhibits were not published to the jury.

Trial counsel did not object to exhibit 60 because they had not considered the re-

---

4. Section 490.130 provides:

The records of judicial proceedings of any court of the United States, or of any state, attested by the clerk thereof, with the seal of the court annexed, if there be a seal, and certified by the judge, chief justice or presiding associate circuit judge of the court to be attested in due form, shall have such faith and credit given to them in this state as they would have at the place whence the said records come. Copies from the record of proceedings of any court of this state, attested by the clerk thereof, with the seal of the court annexed, if there be a seal, or if there be no seal, with the private seal of the clerk, shall be received as evidence of the acts or proceedings of such court in any court of this state. Records of proceedings of any court of this state contained within any statewide court automated record-keeping system established by the supreme court shall be received as evidence of the acts or proceedings in any court of this state without further certification of the clerk, provided that the location from which such records are obtained is disclosed to the opposing party.

quirements in section 490.130 and "just completely spaced out on that and didn't object" to the admission. For exhibit 61, trial counsel believed the exhibits had the proper requirements to be admitted and forgot to object to the admission of the exhibit without a seal. Trial counsel offered no trial strategy for not objecting to either exhibit.

### 2. Motion Court's Findings

The motion court found exhibit 60 was an official record of another state and admissible under section 490.220 [5] because it was properly certified. Any objection would lack merit and Forrest was not prejudiced because the jury never heard of or saw the other convictions.

The motion court found exhibit 61, the certified copy of prior convictions, was not properly authenticated under section 490.130; however, the evidence in it was cumulative to exhibit 60.

As to both exhibits, the motion court found Forrest did not argue the evidence was inaccurate or that he did not commit the crimes. The motion court also noted there is no reasonable probability of a different outcome if the records were excluded because the convictions were collateral to crimes already admitted.

### 3. Analysis

The motion court did not err in denying the ineffective assistance of counsel claim. Exhibits 60 and 61 were properly admitted under section 490.220, which establishes the admissibility of another state's records as evidence. Section 490.130 establishes when records of judicial proceedings from another state are given full faith and credit, and does not apply here. Exhibit 61 is cumulative to exhibit 60. *See Goodwin*, 191 S.W.3d at 38.

Forrest has not shown prejudice resulted from the admission of the evidence. There is no reasonable probability the jury would have reached a different sentence in the absence of either or both exhibits.

Forrest failed to show trial counsel's performance was deficient and failed to show he was prejudiced. The motion court's findings are not erroneous. The point is denied.

### F. Voir Dire

Forrest argues the motion court clearly erred in denying the ineffective assistance of counsel claim for failing to object to the State's voir dire questions about returning a death sentence in open court. Forrest alleges the State's improper statements appealed to matters outside the evidence and prejudiced Forrest.

### 1. Facts

During voir dire regarding punishment, follow-up questions were posed to venire members who initially expressed an unwillingness or uncertainty as to voting for the death penalty. The State asked if the venire members would be able to return a verdict in open court [6] and sign the verdict

---

5. Section 490.220 provides:
   All records and exemplifications of office books, kept in any public office of the United States, or of a sister state, not appertaining to a court, shall be evidence in this state, if attested by the keeper of said record or books, and the seal of his office, if there be a seal.

6. The State asked:
   Let me ask you a couple other questions. I'll tell you that if the jury should come back with a verdict of death, while all of— all twelve must agree to that verdict, you come back into the courtroom, sit in the jury box just as you are now, the defendant would be present, all the lawyers would be present, anybody who wandered in off the street, after all, this is an open courtroom, anyone can attend, and your verdict would be announced to the defendant, and it would therefore be announced that you and

if selected as foreperson.[7] On Forrest's request, the jury was polled, by name and number in open court, after the guilt and penalty verdicts were read.

In the post-conviction hearing, one trial counsel testified the voir dire questions were not objectionable. The other trial counsel testified she did not object and had no specific trial strategy for her actions. She testified that some questions were problematic, objectionable, and intimidating, but the objections would have been overruled. The trial counsel explained the question was similar to the "signing the verdict" question, which has been upheld by this Court.

### 2. Motion Court's Findings

The motion court found the State's voir dire questions were proper and indistinguishable from questions upheld by this Court in *State v. Kreutzer*, 928 S.W.2d 854 (Mo. banc 1996). The motion court justified its decision by referring to this Court's decisions allowing voir dire questions relating to the public announcement of the death sentence and trial counsel polling the jury, by name and in open court, on returning the verdict.

### 3. Analysis

The motion court's findings are supported by evidence in the record. Trial counsel was not effective for failing to object to the voir dire questions. In *Clemmons v. State*, trial counsel was not ineffective for failing to object in voir dire to follow up questions about a venire member's commitment to the death penalty.

785 S.W.2d 524, 529 (Mo. banc 1990). Trial counsel was not ineffective because the movant "failed to demonstrate any bias occurred against him because of the jury selection process." *Id.* The finding was affirmed because the objection was non-meritorious. *Id.* The Court has rejected the argument that "asking whether a prospective juror could sign a death verdict if selected as foreperson improperly seeks a commitment from the venireperson." *Kreutzer,* 928 S.W.2d at 866.

The State's questions were directed at whether a venire member could sign the death verdict. The questions were not argumentative and did not deprive Forrest of due process. Trial counsel was not ineffective for failing to object to a non-meritorious claim. *Worthington v. State,* 166 S.W.3d 566, 581–82 (Mo. banc 2005).

Furthermore, Forrest was not prejudiced by the questions as a reasonable jury found three statutory aggravators beyond a reasonable doubt.

Forrest failed to show trial counsel's performance was deficient and failed to show he was prejudiced. The motion court's findings are not erroneous. The point is denied.

### G. Available Mitigating Evidence

■ Forrest argues the motion court clearly erred in denying the ineffective assistance of counsel claim that trial counsel failed to introduce available mitigating evidence. Forrest alleges Dr. Cunningham, a clinical and forensic psychologist, should have testified about Forrest's low

---

your fellow jurors had voted that he should die, could you do that?
Similar versions of this question were asked to the different small groups of venire members.

7. The State asked:
   I will tell you, too, that while the verdict must be unanimous, a verdict is signed by the foreperson alone. Could you sign a death verdict?
   When one juror responded "I don't think so," the State asked "your name on that piece of paper in the court file for as long as may be?"
   Again, similar versions of this question were asked to the different small groups of venire members.

risk of future dangerousness and risk factors and he was prejudiced.

### 1. Facts

Dr. Cunningham, a clinical and forensic psychologist, determines a defendant's level of dangerousness based on risk factors. Trial counsel decided not to retain Dr. Cunningham after a brief meeting with him. Trial counsel testified Dr. Cunningham was not called as a witness because they were not impressed with preliminary statistical figures about Forrest's probability of future dangerousness and they were concerned about the disclosure of a homicide where Forrest was a possible suspect.

Dr. Cunningham testified in the post-conviction hearing that Forrest is "unlikely to be involved in violence in prison" due to his age, adjustment to prison, and having a high school diploma. Dr. Cunningham also testified about Forrest's family situation, substance abuse, and brain dysfunction.

The State addressed Forrest's dangerousness in the penalty phase's closing argument. The State argued:

> [Defense Counsel] says putting [Forrest] in prison is enough, for life. You know, well, unfortunately there are people in prison too: prisoners and staff and guards. It's not like he's going to be inside of a concrete box with no access to anybody so society is still at risk.

### 2. Motion Court's Findings

The motion court found Dr. Cunningham's testimony was not credible because he "vastly underestimate[d]" the circumstances of the crimes, specifically the death of a law enforcement officer; he would alienate the jury by implying the jury could not analyze the mitigating evidence without his testimony; and he earned most of his income from testifying for capital defendants. Trial counsel made a strategic decision not to call Dr. Cunningham because evidence of another homicide may come out. Additionally, Dr. Cunningham's testimony was cumulative to evidence already admitted and Forrest was not prejudiced.

### 3. Analysis

The motion court's findings are supported by evidence in the record.

Trial counsel did not render deficient performance in representing Forrest. This Court will not challenge the motion court's determination of Dr. Cunningham's credibility as it could make the best observation, *State v. Simmons,* 955 S.W.2d 729, 747 (Mo. banc 1997), or trial counsel's strategic decision not to call a witness, *see Goodwin,* 191 S.W.3d at 29. In addition, trial counsel was not ineffective because Dr. Cunningham's testimony was cumulative. *See id.* at 38.

The State argued Forrest's future dangerousness in closing arguments. Even if Dr. Cunningham's opinion might have assisted in responding to this argument, trial counsel made a strategic decision on the matter, which will not be challenged. *See id.* at 25.

Forrest was not prejudiced. There is no reasonable probability the jury would have entered a different sentence due to Dr. Cunningham's testimony, because it had the underlying evidence Dr. Cunningham relied on and could have independently evaluated the evidence.

Forrest failed to show trial counsel's performance was deficient and failed to show he was prejudiced. The motion court's findings are not erroneous. The point is denied.

## VI. Points without an Evidentiary Hearing

A movant is entitled to an evidentiary hearing when: (1) facts, not conclu-

sions, are pleaded that warrant relief; (2) the record does not refute the facts; and (3) movant was prejudiced. *Matthews v. State*, 175 S.W.3d 110, 113 (Mo. banc 2005). *See* Rule 29.15(h)

Forrest raises three points alleging denial of an evidentiary hearing.

## A. Proportionality Review

■ Forrest argues the motion court clearly erred in denying an evidentiary hearing concerning this Court's non-compliance with the proportionality review. Forrest alleges non-compliance with section 565.035.6 and the Court failed to consider all similar cases.

### 1. Facts

A statutory required proportionality review of a death sentence is performed by this Court on appeal. Section 565.035. The statute requires this Court to refer to similar cases considered and maintain "the records of all cases in which the sentence of death or life imprisonment without probation or parole was imposed after May 26, 1977." Section 565.035.5–6.

On direct appeal, this Court conducted a proportionality review and found Forrest's sentence was "neither excessive nor disproportionate to the penalty imposed in similar cases, considering the crime, the strength of the evidence, and the defendant." *Forrest*, 183 S.W.3d at 232. The Court specifically found the death penalty was upheld in crimes involving multiple murders and listed four cases in a footnote. *Id.* at 232 n. 52.

### 2. Motion Court's Findings

The motion court found Forrest is not entitled to relief because the point is non-meritorious, has no factual support, and is not cognizable.

### 3. Analysis

The argument that this Court has failed to compile a database of death penalty cases has previously been rejected. *State v. Smith*, 32 S.W.3d 532, 559 (Mo. banc 2000); *State v. Whitfield*, 837 S.W.2d 503, 515 (Mo. banc 1992). This Court has and will continue "to examine and reexamine jury decisions to see if a consensus forms that particular circumstances make the death penalty inappropriate." *Whitfield*, 837 S.W.2d at 515.

■ Forrest also argues "a thorough review would have included similar cases in which the brain-damaged defendant killed multiple people or a law enforcement officer, but still received a life sentence." The argument that all similar cases must be considered has been rejected. In *Smith*, this Court reiterated its position as:

the issue when determining the proportionality of a death sentence is not whether any similar case can be found in which the jury imposed a life sentence, but rather, whether the death sentence is excessive or disproportionate in light of "similar cases" as a whole.

32 S.W.3d at 559 (internal citations omitted). This Court also has emphasized that a comparison to similar cases cannot be the sole determination in a proportionality review and that individual circumstances, including the specific crime and aggravating and mitigating circumstances, must be considered. *State v. Edwards*, 116 S.W.3d 511, 549 (Mo. banc 2003).

Missouri allows its prosecutors discretion to forego seeking the death penalty and allows its juries discretion not to impose the death penalty, even in the most egregious cases. This exercise of "mercy" could not exist if it was then mandated in all other similar cases. By definition, mercy allows more lenient sentences when other sentences are justified. This Court will

not abandon a prosecutor's or a jury's unfettered right to exercise mercy to satisfy the defense's one-sided claim for consistency.

The motion court did not err. Forrest is not entitled to an evidentiary hearing. The point is denied.

## B. Closing Argument

Forrest argues the motion court clearly erred in denying an evidentiary hearing regarding the State's closing arguments or, in the alternative, trial counsel was ineffective for failing to object to the closing arguments. Forrest alleges the State's "duty" arguments were improper.

### 1. Facts

The State ended the rebuttal of the closing arguments in the guilt and penalty phases by asking the jury to "do your duty." In the guilt phase, the State ended the rebuttal with:

You know this is murder in the first degree in all three instances. I simply ask that you go do your duty.

In the penalty phase, the State ended the rebuttal with:

You could send him to prison, he knows all about prison. I suggest to you that's tantamount to doing nothing. It's not enough. Three people are dead. Society is depending upon you. Do your duty. It doesn't have to be easy. It shouldn't be. But it needs doing.

### 2. Motion Court's Findings

The motion court dismissed the claim without an evidentiary hearing because the arguments were proper and an objection would lack merit.

### 3. Analysis

▮▮ It is permissible for the State to address in closing arguments "the need for strong law enforcement, the prevalence of crime in the community, and that convic-

tion of the defendant is part of the jury's duty to uphold the law and prevent crime." *State v. Roberts,* 948 S.W.2d 577, 593 (Mo. banc 1997). The State may also "urge the jury to consider the effect upon society if the law is not upheld." *Id.* Here, the State's arguments were proper. The motion court did not err in denying the evidentiary hearing because this is a question of law. Furthermore, trial counsel was not ineffective for failing to make a non-meritorious objection. *See id.*

The motion court did not err. Forrest is not entitled to an evidentiary hearing. The point is denied.

## C. Improper Opening Statement

▮▮ Forrest argues the motion court clearly erred in denying an evidentiary hearing on the claim trial counsel was ineffective for failing to object to the State's improper personalization in the opening statement of the penalty phase. Forrest alleges he pleaded facts showing entitlement to relief and he was prejudiced.

### 1. Facts

In the opening statement of the penalty phase, the State made the following comments:

In the case that you will hear and the evidence that we will present or have already presented, I believe that we—that—that the following statutory aggravating circumstances you will find proven beyond a reasonable doubt.

With regard to Michael Wells, as you might imagine, one of the statutory aggravating circumstances I think the evidence has shown and will show is that the murder of Michael Wells was committed while the defendant was engaged in the commission of another unlawful homicide, that being of Harriett Smith. I think you will find—it will be my position and that the evidence will show that

the aggravating circumstances are proven.

Forrest argued in the post-conviction petition that the arguments were objectionable as improper expressions of personal opinion and personal knowledge without evidentiary basis.

### 2. Motion Court's Findings

The motion court dismissed the claim without an evidentiary hearing because the facts alleged did not entitle Forrest to relief and he was not prejudiced.

### 3. Analysis

■ The motion court did not err in denying the evidentiary hearing as Forrest's alleged facts do not warrant relief. Admissible evidence may be referred to in an opening statement if a good faith basis exists. *White v. State*, 939 S.W.2d 887, 902 (Mo. banc 1997). The use of the word "I" in an argument is not automatically an impermissible personalized argument. *State v. Storey*, 901 S.W.2d 886, 897 (Mo. banc 1995). A review of the entire opening statement shows the arguments were based on admissible evidence and the State did not improperly personalize the opening statement by using the word "I." Forrest has also not shown prejudice resulted from the comments.

The motion court did not err. Forrest is not entitled to an evidentiary hearing. The point is denied.

### VII. Non–Ripe

Forrest raises two claims that are not ripe in the post-conviction appeal.

### A. Lethal Injection

■ Forrest alleges the motion court clearly erred in denying the lethal injection claim. Forrest alleges the lethal injection method is unconstitutional as cruel and unusual punishment. Forrest claims Missouri's method causes unnecessary pain and suffering by using pancuronium bromide, a neuromuscular blocking agent. The motion court denied the claim without a hearing because it was not cognizable in the Rule 29.15 motion.

The claim is not ripe. As this Court has noted:

> As it is unknown what method, if any, of lethal injection may be utilized by the State of Missouri at such future time, if any, as [Forrest's] right to seek relief in state and federal courts is concluded and his execution date and method are set, it is premature for this Court to consider whether a particular method of lethal injection violates the Eighth Amendment. . . .

*Worthington*, 166 S.W.3d at 583 n. 3; *see also, Zink*, 278 S.W.3d at 193. The motion court did not err in denying the claim and the point is denied.

### B. Clemency

■ Forrest alleges the motion court clearly erred in denying his claim that Missouri's clemency process is arbitrary and capricious. The motion court denied the claim without a hearing because it was not cognizable.

Forrest has not requested clemency at this time. This Court has repeatedly held a clemency claim is not ripe for review when clemency has not been sought. *See Christeson v. State*, 131 S.W.3d 796, 802 (Mo. banc 2004); *Middleton v. State*, 80 S.W.3d 799, 817 (Mo. banc 2002). The motion court did not err in denying the claim and the point is denied.

### VIII. Conclusion

The motion court's judgment is affirmed.

All concur.