**Mark Edward IMMEKUS, Movant–Appellant,**

v.

**STATE of Missouri, Respondent– Respondent.**

**No. SD 32233.**

Missouri Court of Appeals, Southern District, Division Two.

Aug. 6, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 2013.

that instruction necessarily resolves his claims as to Instruction B, as well.

Mark A. Grothoff, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, J.

Mark Edward Immekus ("Movant") appeals the motion court's judgment denying his Rule 29.15 motion for post-conviction relief from his conviction, following a jury trial, of first-degree assault, *see* section 565.050.[1] He claims the motion court clearly erred in not finding that his trial counsel was ineffective for "failing to request a lesser-included jury instruction for assault in the second degree." We determine the motion court did not clearly err in finding that trial counsel employed an objectively reasonable trial strategy in not making such a request, and affirm the motion court's judgment.

### *Factual and Procedural Background* [2]

Movant had dated Saveda Bollinger ("Victim") before leaving the state, after which she started dating Mike McQueen ("McQueen"). On October 3, 1996, Movant returned to Missouri, and Victim and McQueen took him to Victim's home to get clothes and belongings that he had left

---

1. All rule references are to Missouri Court Rules (2013). All references to statutes are to RSMo 1994.

2. Parts of the background are freely borrowed from this Court's opinion in Movant's direct appeal, *State v. Immekus,* 28 S.W.3d 421, 424–25 (Mo.App.2000), without further attribution.

there before leaving the state. Victim and McQueen then took Movant to a motel in Rolla where Victim rented a room for Movant to spend the night. That evening, Movant called Victim and told her that he had taken pills from her home and that if she did not come alone to the motel to see him, he would attempt suicide by taking them.

Victim and McQueen started for the motel, but Victim dropped off McQueen at a grocery store and told him to walk to the motel. She instructed McQueen that if she was not outside when he arrived at the motel, it meant she was having trouble, and he should come to the door. When Movant answered Victim's knock on the door, he threw her to the floor, hit her in the face, and pulled her by her hair onto a chair where he tied her up with a cord. Movant proceeded to hit Victim in the face several times. He cut her face with a single-edged razor, cut her hair to a length of 1½ inches (it had come to the middle of her back), cut the back of her head, and shaved off her eyebrows. At the same time, he told Victim that he was going to make her "as ugly as her boyfriend," and he held a mirror in front of her and asked, "Aren't you pretty now?" At one point, Movant told her that if she thought she had been beaten, "now you're going to be beat." He also told her, "Dead time, bitch." In addition to hitting her in the face, Movant also ripped off Victim's pants, tearing off the buttons on the fly, and kicked her in the lower part of the stomach with his cowboy boots. Movant used a tape recorder he had taken from Victim's house to record some of his comments about what he had done to her and what he intended to do, including that he intended to inject her with methamphetamine. He also told her that his friend, Rick Fisher, was going to arrive and rape her.

The motel clerk's office was directly beneath the room that Victim had rented for Movant. When the clerk heard loud banging coming from that room, she thought someone was tearing up the room. She called the room and told Movant that he was going to have to curtail his activities because she didn't want the room torn up, and he said "Okay." McQueen then arrived at the motel and asked the clerk to call the room after he got no answer by knocking on the door to see if Victim was ready to go. The clerk called Movant again and asked to speak to Victim. Movant gave the phone to Victim who told the clerk, "Oh, help me, please God[.]" The clerk then called 911.

At some point, Rick Fisher arrived at the room. Although he was acquainted with Victim, he did not recognize her because of her condition. At that time, Victim was still bound in the chair and was bleeding from her wounds. Fisher said, "I don't need this, I'm leaving[,]" and Movant said he was going with him. Movant untied Victim and threw her clothes at her. As soon as Victim could get her clothes on, she left the room and ran downstairs. Fisher then left the motel room and got in his car. Movant followed Fisher outside, got in the car with him, and they left. The police and an ambulance arrived at the motel shortly after they left. Some officers left the scene to look for Movant and Fisher, and one or more officers went to the room to see if anyone else was there. They entered the room through the door which Movant left open and saw the room in disarray, hair on the floor, a chair with a cord tied around the arms, and blood on the wall behind the chair. Shortly, word came that Fisher's car had been stopped, and the officers in the room left to assist in the arrest, pulling the motel room door shut, which resulted in it being locked.

Victim was taken to the hospital, where she was found to have cuts on both cheeks, a cut on the back of her head, and cut-off hair. Her eyes were severely swollen. The physician who examined her had to hold her eyes open in order to examine them because of the swelling. Although Victim was not hospitalized overnight, she went back the next day for a CT scan that revealed a fracture of the left orbital floor (the under part of the cavity or socket of the skull in which the eye is situated). The risks of a fractured orbital floor include the possibility of infection and paralysis of the eye by trapping the optic nerve. Also, Victim's front tooth was loose and cracked, and it eventually fell out.

Movant was charged with the class A felony of assault in the first degree by attempting "to kill or cause serious physical injury to [Victim] by cutting her with a razor blade and striking her with his fists and in the course thereof inflicted serious physical injury[.]" *See* Section 565.050.2.[3] That Movant caused physical injury to Victim was undisputed during the jury trial on this charge and admitted by Movant in the opening statement by trial counsel. Movant's defense was that he did not attempt to cause *serious* physical injury to Victim and did not cause *serious* physical injury to Victim.[4]

Because subsection 2 of section 565.050 provides that "[a]ssault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a

class A felony[,]" the charge was submitted to the jury in two alternative verdict-directing instructions. Instruction 5 (class A felony) required the jury to find that Movant "attempted to kill or cause serious physical injury to [Victim] by cutting her with a razor blade and striking her with his fists, *and* . . . that [Movant] in the course of such conduct caused serious physical injury to [Victim]." (Emphasis added). Instruction 7 (class B felony) omitted the latter and required only that the jury find that Movant "attempted to kill or cause serious physical injury to [Victim] by cutting her with a razor blade and striking her with his fists." In addition, at Movant's request, Instruction 9 alternatively instructed the jury on the lesser-included offense of assault in the third degree, *see* section 565.070, a class A misdemeanor. That instruction required only that the jury find that Movant "attempted to cause physical injury to [Victim] by cutting her with a razor blade and striking her with his fist." The jury, failing to find that Movant caused serious physical injury to Victim, found Movant guilty of the class B felony of assault in the first degree under Instruction 7.

In Movant's direct appeal, this Court held that the evidence was sufficient to support a finding that Movant attempted to cause serious physical injury; however, the sentence was set aside and the case remanded for re-sentencing, due to an error in sentencing. *State v. Immekus*, 28

---

**3.** Movant was also charged and convicted of armed criminal action, *see* section 571.015, and felonious restraint, *see* section 565.120, arising out this this incident. Neither of these convictions is at issue in this appeal.

Section 565.050 provides:
  1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person.

**2.** Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony.

**4.** Section 565.002.6 provides: " 'Serious physical injury' means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[.]"

S.W.3d 421, 427 (Mo.App.2000). Movant's conviction for assault in the first degree was eventually fully affirmed by this Court. *State v. Immekus,* 55 S.W.3d 866, 867 (Mo.App.2001).

In his Rule 29.15 amended motion for post-conviction relief, Movant alleged, among other claims, that trial counsel provided ineffective assistance "when he failed to tender an instruction on second degree assault for submission to the jury." *See* section 565.060.[5]

At the evidentiary hearing on Movant's amended motion, trial counsel testified:

I believe, and I still believe that there was no serious physical injury. The wounds were superficial, and I debated on whether or not to instruct down at all when I did to avoid a compromise verdict. And I thought the third degree would be sufficient enough if the jury wanted to compromise that they could compromise down there.

I did not want to give the jury an opportunity to compromise on a second degree assault. It was trial strategy, as what I believed the evidence would support.

Trial counsel further testified that even though a class C felony assault-in-the second-degree instruction based upon section 565.060.1(2)—"attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument"—would have been supported by the evidence, he chose not to request it. He thought that submission under this subsection was not much different "from a psychological point of view" from the class A misdemeanor assault-in-the-third-degree instruction that he requested. He "felt that if the jury was going to convict [Movant] on [the class C felony of assault in the second degree], that they would convict him on the third degree assault [.]" In other words, trial counsel thought that if the jury was "to go with the compromise, best to go with the third degree assault." Trial counsel discussed the elements of each offense with Movant, as a well as his strategy of only submitting the assault in the third degree as a lesser-included offense instruction.

The motion court found:

[Trial counsel] testified that his defense was directed toward challenging the State's burden of proving serious physical injury and submitting an instruction on second degree assault, he felt, would invite the jury to reach a compromise verdict. Such a compromise would have resulted in a long prison term since, prior to trial, movant was found to be a prior and persistent felony offender. In

---

5.  Section 565.060 provides:
   1.  A person commits the crime of assault in the second degree if he:
     (1) Attempts to kill or knowingly causes or attempts to cause serious physical injury to another person under the influence of sudden passion arising out of adequate cause; or
     (2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument; or
     (3) Recklessly causes serious physical injury to another person; or
     (4) While in an intoxicated condition or under the influence of controlled substances or drugs, operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause physical injury to any other person than himself; or
     (5) Recklessly causes physical injury to another person by means of discharge of a firearm.
   2.  The defendant shall have the burden of injecting the issue of influence of sudden passion arising from adequate cause under subdivision (1) of subsection 1 of this section.
   3.  Assault in the second degree is a class C felony.

short, defense counsel's strategy on this issue was not to assist the State by reducing its burden of proof.

In order to prevail on this point, movant must show that the decision not to request the lesser included offense instruction was not reasonable trial strategy. If counsel is shown to have made an objectively reasonable choice in not requesting the instruction, there is no ineffective assistance of counsel. *Oplinger v. State*, 350 S.W.3d 474, 477 (Mo.App. 2011). The court finds that counsel's decision not to request a second degree assault instruction, under the circumstances an all or nothing strategy, was objectively reasonable.

The motion court entered its judgment denying Movant's motion. Movant timely appealed.

### Standard of Review

"Appellate review of the denial of a post-conviction motion is limited to a determination of whether the findings of fact and conclusions of law of the motion court are clearly erroneous." *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Id.*

### Discussion

In his sole point, Movant claims that the motion court's finding on this claim was clearly erroneous because "his trial counsel failed to act as a reasonably competent attorney would under the same or similar circumstances by failing to request a lesser-included jury instruction for assault in the second degree." We disagree.

■ "It is presumed that counsel is effective and that the burden is on the movant to show otherwise." *Forrest v. State*, 290 S.W.3d 704, 708 (Mo. banc 2009). To establish ineffective assistance of counsel for failure to request a lesser-included offense instruction, [a movant] must show [6] three things: (1) the evidence would have required submission of a lesser-included offense instruction had one been requested, (2) the decision not to request the instruction was not reasonable trial strategy, and (3) he was thereby prejudiced. *Oplinger v. State*, 350 S.W.3d 474, 477 (Mo.App.2011) (citing *Jackson v. State*, 205 S.W.3d 282, 285 (Mo.App.2006)). "Trial strategy is not a basis for ineffective assistance of counsel." *Forrest*, 290 S.W.3d at 708. "An omission is presumed to be trial strategy." *Id.* "Trial counsel's decisions made after considering the law and facts and pondering alternative strategies generally are not disturbed by a court on review." *Id.*

■ Movant focuses most of his argument upon showing that "the trial court would have been obligated to submit an instruction for second-degree assault if trial counsel had made that request." While this may satisfy the first showing required of Movant, *see Oplinger*, 350 S.W.3d at 477, we need not decide that issue because Movant has nevertheless failed to support the second required showing—that the decision not to request the instruction was not reasonable trial strategy, *see id.* Mov-

---

6. These showings, of course, are under the umbrella of the over-arching two-prong *Strickland* test for ineffective assistance of counsel. *Oplinger*, 350 S.W.3d at 477. "To prove ineffective assistance of counsel, a movant must demonstrate: (1) his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances; and (2) his defense was prejudiced as a result of that deficiency." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Storey*, 901 S.W.2d 886, 893 (Mo. banc 1995)).

ant asserts that, under these circumstances, a reasonably competent attorney would have requested an instruction for second-degree assault, that counsel's decisions were neither sound nor reasonable, and that "[p]articularly in this case, *where the evidence provides a basis for assault in the second degree,* it was patently unreasonable to not request a jury instruction for second-degree assault based on attempting to cause or causing physical injury, rather than serious physical injury." (Emphasis added). Movant fails to provide any evidentiary support for these assertions by citation to the record on appeal or any legal support by citation to relevant legal authorities. Apparently, the crux of Movant's argument is that because the evidence would have supported an instruction for assault in the second degree, it was unreasonable for trial counsel not to request it. That argument merely collapses the first showing that Movant is required to make into the second, *see Oplinger,* 350 S.W.3d at 477, and does not support Movant's second required showing—that the decision not to request the instruction was not reasonable trial strategy.

The State counters Movant's assertions, claiming that "[i]n essence, [trial] counsel employed a variation of the all-or-nothing strategy that has repeatedly been upheld as a reasonable strategy." The State cites the following cases in support: *Oplinger,* 350 S.W.3d at 477; *Neal v. State,* 99 S.W.3d 571, 575 (Mo.App.2003); *see also Jackson,* 205 S.W.3d at 286 (quoting *Love v. State,* 670 S.W.2d 499, 502 (Mo. banc 1984)) (" '[M]ovant's counsel cannot be convicted of being ineffective for seeking to employ the best defense for [her] client by not offering the jury a middle ground for conviction.' "); *State v. Lee,* 654 S.W.2d 876, 879 (Mo. banc 1983) ("It is also *recognized that defense counsel frequently make a conscious decision not to request a lesser offense as a matter of trial strategy.* The reasoning is that the jury may convict of the lesser offense, if submitted, rather than render a not guilty verdict on the higher offense if the lesser is not submitted.").

Here, trial counsel reasonably believed that reasonable doubt existed as to whether Movant attempted to cause *serious* physical injury to Victim. If the jury concluded likewise, it would acquit Movant of assault in the first degree under both Instructions 5 and 7. Had he employed a complete all-or-nothing strategy, trial counsel reasonably concluded that, given the undisputed [7] terrorizing nature of Movant's actions toward Victim and the physical injuries he actually inflicted upon her, it would make an outright acquittal an extremely difficult decision for the jury and very unlikely. Trial counsel reviewed the elements of the lesser-included offenses of assault in the second degree (class C felony) and assault in the third degree (class A misdemeanor) and reasonably concluded that "from a psychological point of view" the elements of both offenses were very similar. He further reasonably concluded that if the jury was going to compromise on the class C felony of assault in the second degree, it would just as likely do so on the class A misdemeanor of assault in the third degree. A conviction on the latter would have been almost equivalent to an outright acquittal for Movant because he had already spent

---

7. Trial counsel observed during the evidentiary hearing on Movant's post-conviction relief motion that "the most damning piece of evidence in this case was the tape that [Movant] made of the event." There was no dispute during the trial that those events occurred. According to trial counsel, "the reason this case was tried was on the issue of serious physical injury."

about a year in jail awaiting trial, the maximum jail term for a class A misdemeanor, *see* section 558.011.1(5). On the other hand, a conviction on the class C felony would have exposed Movant to a maximum term of twenty years' imprisonment as a result of his status as a prior and persistent offender. *See* section 558.016.7(3). Based upon these conclusions, trial counsel devised an all-or-misdemeanor strategy of requesting an assault-in-the-third-degree instruction as a lesser-included offense, while foregoing any request for an assault-in-the-second-degree instruction. Before implementing this strategy, however, trial counsel discussed it, as well as the elements of each offense, with Movant.

The motion court found that trial "counsel's decision not to request a second degree assault instruction, under the circumstances an all or nothing strategy, was objectively reasonable." Movant has failed to present any evidence at the evidentiary hearing on his amended motion for post-conviction relief or any legal authority or argument on appeal that, after a review of the entire record, leaves this Court with a definite and firm impression that the motion court's finding is mistaken. *See Moss,* 10 S.W.3d at 511. In the absence of such an impression, the motion court's finding is not clearly erroneous. *Id.* Movant's point is denied.

### Decision

The motion court's judgment denying Movant's Rule 29.15 amended motion for post-conviction relief is affirmed.

DON E. BURRELL, and MARY W. SHEFFIELD, JJ., concur.