BYE, Circuit Judge,
dissenting.
I would reverse the district court and grant Earl Forrest a new sentencing. I believe Forrest’s trial counsel were constitutionally ineffective in failing to present a PET scan at the penalty phase of Forrest’s trial and the Missouri Supreme Court unreasonably determined trial counsels’ actions did not constitute constitutionally ineffective assistance of counsel. See Forrest v. State, 290 S.W.3d 704 (Mo.2009). Therefore, I respectfully dissent.
The majority believes trial counsels’ decision to forego a brain scan was “considered and strategic.” I disagree. I believe the Supreme Court of Missouri made an unreasonable determination of the facts because the court failed to take into account that the testimony of defense experts was undermined by a lack of medical evidence.
The center of the defense strategy at trial was to show Forrest should not be sentenced to death because he suffered from brain damage. The defense called several experts to testify about Forrest’s impaired functioning due to substance abuse, brain damage to Forrest’s right frontal lobe, Forrest’s impaired judgment and impulse control, and other cognitive disorders. During its cross-examination of defense experts and in closing arguments, the state effectively attacked the experts’ findings of Forrest’s brain damage by emphasizing there were no medical records or medical tests presented to corroborate the subjective opinions of these experts. The state repeatedly argued to the jury Forrest had failed to prove brain damage because the defense did not retain a physician to scan Forrest’s brain to demonstrate the brain damage existed with objective scientific evidence.
During the penalty phase, the state challenged the findings and credibility of the defense experts by repeatedly characterizing their testimony as untrustworthy. As only one of myriad examples, during the penalty phase cross-examination, the state asked: “Is there a single objective feature which you can show us, an MRI, an x-ray, anything where you can point to something and say here is this brain damage, or here is this problem with his brain?” The defense expert was required to acknowledge no brain scans had been undertaken to corroborate the findings of brain damage. The state again reemphasized the fact no objective testing, including a PET scan, was conducted to prove Forrest was brain damaged or suffered from brain dysfunction. The state’s strategy was effeetive-the jury foreman later told a newspaper the jury did not believe Forrest had brain damage based on the evidence presented. Appellant’s Add. 30.
A PET scan would have neutralized the state’s attacks about a lack of objective evidence of brain damage and would have provided the jury an appropriate view of such brain damage. Trial counsel should have realized having the PET scan available would help their case; in fact, trial *863 counsel discussed a PET scan more than a year in advance yet failed to procure one, even after defense experts recommended a PET scan be procured. When trial counsel finally decided to procure a PET scan at the eleventh hour, counsel backed out when an MRI was requested. There is no strategy to this; counsel were simply ineffective. Being presented with a biological mechanism to account for violent behavior sways sentencing courts. Benedict Carey, Study of Judges Finds Evidence from Brain Scans Led to Lighter Sentences, N.Y. Times, August 16, 2012. The PET scan would have enabled the expert witnesses to propose a viable biological mechanism to show the jury Forrest’s brain damage and should have been presented by defense counsel.
The majority also believes “the record indicates even favorable PET scan results ... would merely have corroborated Forrest’s existing experts.” I disagree with this conclusion and believe the Missouri Supreme Court was unreasonable in determining a PET scan would have been cumulative. See Forrest, 290 S.W.3d at 709. Evidence regarding the main issue of a case — here, Forrest’s brain damage — the decision of which turns on the weight of the evidence, cannot be cumulative because the weight and depth of the evidence is what was to be weighed by the jury. Black v. State, 151 S.W.3d 49, 56 (Mo. 2004). Additionally, a PET scan is a different device than an examination by a treating physician. The defense experts were all cross-examined on the issue of a lack of any test or objective evidence of brain damage. While a PET scan may have been cumulative in showing the same brain damage testified to by the experts, it would not have been cumulative as to its effect on the jury — the PET scan would have played a separate, unique roll in the penalty phase by providing objective evidence on which the jury could have relied to find Forrest had incurred brain damage. Moreover, the most compelling scientific research should have been presented if it were available, which it could have been, particularly when there was a substantial chance experts would be effectively cross-examined on such technology as being missing from this case.
Finally, the majority reasons defense counsel made a strategic decision in foregoing any brain scans for fear a scan would come back negative. The Missouri Supreme Court also found counsel acted strategically in avoiding a brain scan. Forrest, 290 S.W.3d at 709. I disagree and believe the Missouri Supreme Court was unreasonable in reaching such a conclusion. We do not, and should not, require all defense counsel presenting evidence of brain damage to obtain a PET scan of their client. However, this case presents an abnormal circumstance. Counsel knew at least a year in advance they planned to mount a defense strategy almost solely reliant on Forrest’s brain damage, yet failed to obtain any objective evidence about Forrest’s brain. Additionally, their own expert witnesses explicitly recommended trial counsel obtain PET scans of Forrest. Under these circumstances, trial counsel were ineffective in failing to pursue a PET scan or any other type of objective evidence of brain damage or brain abnormalities.
Before this court is “[t]he issue [of] whether the failure to discover and present evidence of [Forrest]’s mental condition undermines our confidence in the outcome of the ... sentencing phase of the trial.” Antwine v. Delo, 54 F.3d 1357, 1365 (8th Cir.1995). The failure to present PET scan evidence showing brain damage strongly undermines my confidence in the outcome of the penalty phase of Forrest’s trial. For these reasons, I would reverse the district court and would order a new *864 penalty phase hearing where Forrest could present a PET scan as mitigating evidence.