Gene WREN, Appellant,

v.

STATE of Missouri, Respondent.

No. ED 93732.

Missouri Court of Appeals, Eastern District, Division Four.

June 15, 2010.

_____

Gwenda Renee Robinson, Missouri Public Defender Office, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, James B. Farnsworth, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

## Introduction

Gene Wren (Movant) appeals from the motion court's denial, following an evidentiary hearing, of his amended Rule 29.15 motion for post-conviction relief. This Court affirmed Movant's convictions, following a jury trial, of leaving the scene of a motor vehicle accident, in violation of Section 577.060, RSMo 2000,[1] careless and imprudent driving, in violation of Section 304.012, and driving without a valid license, in violation of Section 302.020. _State v. Wren_, 276 S.W.3d 880 (Mo.App. E.D.2009). We affirm the motion court's denial of Movant's claims of ineffective assistance of counsel.

## Background

On August 22, 2007, Movant was charged by Information with the class D felony of leaving the scene of a motor vehicle accident, the class A misdemeanor of careless and imprudent driving, and the class A misdemeanor of driving without a valid license. Movant was charged as a prior and persistent offender. A jury trial was conducted on January 31, 2008, during which the State presented witness testimony from the victim, Pervy Strong (Victim), Corrine White (White), and Missouri State Patrol trooper Richard Pipkin (Trooper Pipkin). Movant did not testify and called no witnesses. Movant's defense was mistaken identity, arguing that he was not the driver of the car that crashed. The following evidence was adduced at trial.

During the early morning hours of July 8, 2007, Movant was driving a red Ford Focus belonging to White, who is the mother of his baby, when he reached a curve in the road. Movant had been drinking alcohol and drove straight through the curve and into property belonging to Victim. After leaving the roadway, Movant's vehicle struck a parked car in Victim's driveway and then struck Victim's home. Movant eventually stopped when his car hit a tree.

After hearing and feeling the impact of the crash from inside his home, Victim ran outside and saw the red Ford Focus in his yard. Movant was in the driver's seat,

1. All subsequent statutory references are to RSMo 2000, unless otherwise indicated.

attempting to start the engine. Victim went to the car's passenger window and confronted Movant. Movant stepped out of the vehicle and informed Victim that the car belonged to his "baby's momma" and she had full coverage insurance. Movant also said he was drunk, that he did not have a valid driver's license, and that he had just gotten out of jail and did not want to go back.

Shortly after the crash, Victim's oldest daughter called the police. The dispatch operator asked to speak with Victim, and Victim went inside to talk to the police on the phone. During that time, Movant unloaded several bags from the wrecked Focus to the ground. Then, Victim saw a second vehicle drive up next to Movant's vehicle. Movant and the second vehicle's driver loaded Victim's bags into the second vehicle, a dark-colored sedan. Without notice, Movant and the driver entered the second vehicle and drove off.

A few minutes later, Trooper Pipkin arrived at the scene. Trooper Pipkin ran the license plate number on the Focus and found that it was registered to White. Trooper Pipkin contacted White, who confirmed that she loaned Movant her car that night. Trooper Pipkin showed Victim a photograph of Movant and Victim identified Movant as the driver who drove through his yard and into his house.

At the end of trial, the jury found Movant guilty of all three counts. Movant was sentenced by the judge as a prior and persistent offender to seven years of imprisonment for leaving the scene of an accident and one year in jail for each of the two misdemeanor convictions, to run concurrently with each other and the felony sentence.

Movant appealed his convictions and sentence, which this Court affirmed in *State v. Wren,* 276 S.W.3d 880 (Mo.App. E.D.2009).

## Movant's Post–Conviction Relief Motion

On February 25, 2009, Movant filed his pro se motion for post-conviction relief pursuant to Rule 29.15. Post-conviction counsel was appointed on March 19, 2009, and subsequently filed an amended motion for post-conviction relief, raising two claims of ineffective assistance of his trial counsel. First, Movant claimed that Trial Counsel did not exercise the customary skill and diligence that a reasonably competent attorney would have exercised under similar circumstances when Trial Counsel failed to call Movant's wife, Charlotte Wren (Wife) to testify at trial about Movant's alibi defense. Movant alleged that Wife would have testified that Movant could not have been the driver of the Ford Focus that crashed into Victim's yard and house because Movant was with her at an apartment building at the time of the wreck. Additionally, Movant alleged that his Trial Counsel was ineffective for failing to impeach White with a letter she had written to Movant before trial stating: "Sh*t, can't yo [sic] girl just say you were with her it is the truth. Like I said if you need me I'll do it since I never gave you the car in the first place." Movant alleged that the statement in the letter conflicted with White's trial testimony that she loaned Movant her car on the night of the crash.

The motion court held an evidentiary hearing on Movant's post-conviction relief motion on July 17, 2009. At the hearing, Wife testified that she had been with Movant several hours before the crash, but she had dropped Movant off at his friend's house an hour or two before the offenses occurred. Wife said she had informed Trial Counsel that she was with Movant before the accident, but was not completely sure when that even occurred. Wife said she was willing to testify at Movant's trial

because she "assumed that he did not do it," but she admitted she was not with Movant at approximately 1:15 a.m. when the crash occurred. Wife said she still did not know "whether he did or did not do what he's accused of doing."

Movant's Trial Counsel also testified during the evidentiary hearing and explained that she did not call Wife as a witness at trial because she did not believe Wife offered a strong alibi for Movant. Trial Counsel testified that juries often are suspicious of a girlfriend or wife's alibi testimony because they have "a very strong motivation to protect their loved one." Trial Counsel believed the credibility of Wife's potential testimony was further weakened by the fact that there was no specific event tied to her memory of the night in question, and that Wife would have to convince the jury that she remembered being home with Movant on a specific night despite having no real reason to remember that night in particular.

Trial Counsel also testified that she did not call Wife as a witness because Trial Counsel thought Wife's appearance would hurt Movant more than it would help. Trial Counsel explained that Wife matched the description of the "getaway driver" who had arrived at Victim's house after Movant crashed, helped load Movant's bags into her car, and then drove away before the police arrived. The getaway driver was a "black female, larger build," in a dark-colored sedan. Wife, too, is a heavy-set black female who drives a dark-colored sedan. Trial Counsel testified that she was afraid the jury would think that Wife was the getaway driver. Thus, Wife's testimony would confirm Movant's identity as the driver of the Focus rather than support the mistaken-identity defense. Therefore, Trial Counsel not only declined to call Wife as a witness, but also instructed Wife to avoid entering the courtroom during Movant's trial.

Finally, Trial Counsel testified that Wife could have caused trouble as a witness because, at the time of the crash, Wife lived near Victim's house. Trial Counsel worried that the jury might conclude that Wife easily could have acted as the getaway driver, given her close proximity to the crash scene. Trial Counsel testified that she "made a strategic decision concerning the strength of the alibi" when she decided not to call Wife as a witness.

Furthermore, Trial Counsel testified at the evidentiary hearing regarding her decision not to impeach White with the letter Movant claimed White had written after his arrest. The letter stated, "Sh*t, can't yo [sic] girl just say you were with her it is the truth. Like I said if you need me I'll do it since I never gave you the car in the first place." Trial Counsel said that she thought the statement was suspicious and would not be believed by a jury. Trial Counsel thought the phrase, "If you need me I'll do it" seemed to show that White had feelings for Movant and would lie to protect him. Trial Counsel thought that such evidence would undermine her theory that White was testifying falsely against Movant at trial because she was angry at Movant for philandering. Additionally, Trial Counsel believed that the phrase, "it is the truth" seemed like a transparent attempt by the writer to bolster the statement's credibility, and Trial Counsel thought it would "strike a jury badly and not come off as being truthful at all."

Trial Counsel also explained that she decided not to impeach White with the letter to prevent the State from responding with damaging rebuttal evidence. Trial Counsel explained that White had testified in a deposition that she had received threatening letters from Movant and was frightened of him. White testified in her

deposition that Movant had written to her after he discovered that she was going to testify against him. Movant's letter told White to "stick to the plan" and "say what [she] was going to say," or that Movant did not have her car and someone else did. Trial Counsel was concerned that if she tried to impeach White, the State would explain the inconsistency with evidence that Movant had threatened White.

Trial Counsel also testified that if she presented White's letter to the jury, it would force her to put on the alibi defense involving Wife. In the letter, White allegedly asked why Movant's "girl" could not "just say [Movant was] with her." Movant told Trial Counsel that the "girl" mentioned in the letter was Wife. Trial Counsel thought that jurors would wonder who the "girl" was if they saw the letter, forcing Trial Counsel to put Wife on the stand. Although Trial Counsel recognized that she could have impeached White with the letter, she made a strategic decision not to do so.

On August 26, 2009, the motion court issued its Judgment denying Movant's Motion to Vacate, Set Aside or Correct Judgment pursuant to Rule 29.15 and made specific findings of fact and conclusions of law. The motion court found that Wife's testimony would not have provided a viable alibi defense because she could not account for Movant at the time of the offenses. Wife's testimony would have hurt, not helped Movant at trial, the motion court concluded, and therefore, Trial Counsel was not ineffective in failing to call her as a witness at Movant's trial. Further, the motion court found that even if Wife's testimony would have supported an alibi defense, Trial Counsel made a strategic decision not to call Wife as a witness for several reasons. Trial Counsel thought Wife's testimony was a "weak" alibi at best, Wife lived close to the crime scene

and would therefore place Movant close to the crime scene, and Wife fit the general description of the getaway driver.

Regarding Movant's claim that his Trial Counsel was ineffective for failing to impeach White with her letter, the motion court ruled that Trial Counsel used sound trial strategy. The motion court found the letter's statement was ambiguous and could be interpreted as an invitation to commit perjury on Movant's behalf. Additionally, Trial Counsel thought that impeaching White with the letter would lead to testimony regarding threatening letters Movant sent to White. The motion court ruled that Movant failed to carry his burden to prove by a preponderance of the evidence that Trial Counsel was ineffective in representing Movant.

Movant filed his notice of appeal to this Court on October 5, 2009. This appeal follows.

*Points on Appeal*

Movant raises two points on appeal arguing the motion court clearly erred in denying his Rule 29.15 motion for postconviction relief. In his first point, Movant alleges that the motion court clearly erred because Trial Counsel was ineffective for failing to call Wife as a witness. Movant claims that reasonably competent counsel under the same or similar circumstances would have called Wife to introduce Movant's alibi defense and buttress Movant's mistaken-identity defense, and no reasonable trial strategy justified trial counsel's failure to call Wife as a witness.

In his second point, Movant argues that the motion court clearly erred in denying his Rule 29.15 motion because Trial Counsel was ineffective for failing to impeach the State's key witness, White, with a letter she wrote to Movant before trial. Movant alleges that a reasonably competent attorney under the same or similar

circumstances would have impeached White's credibility with her statements in the letter, and no reasonable trial strategy justified Trial Counsel's failure to impeach White's testimony.

In both points, Movant alleges that but for Trial Counsel's ineffectiveness, there is a reasonable probability that the outcome of Movant's trial would have been acquittal. Movant further alleges that the motion court's ruling and Trial Counsel's ineffectiveness denied Movant his rights to due process of law, to effective assistance of counsel, to present a defense, and to a fair trial, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution. Movant requests that this Court reverse the motion court's judgment and remand for a new trial.

### Standard of Review

We review a denial of post-conviction relief to determine whether the motion court's findings and conclusions are clearly erroneous. *Forrest v. State*, 290 S.W.3d 704, 708 (Mo. banc 2009). Findings and conclusions are clearly erroneous if, upon review of the entire record, we are left with the definite and firm impression that a mistake has been made. *Gehrke v. State*, 280 S.W.3d 54, 56–57 (Mo. banc 2009).

### Discussion

To prevail on a claim of ineffective assistance of counsel, a movant must show that his counsel did not demonstrate the customary skill and diligence that a reasonably competent attorney would display when rendering similar services under the existing circumstances, and the movant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove

prejudice, a movant must show a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Id.* at 694, 104 S.Ct. 2052. Trial counsel is presumed effective, and a movant bears the burden of proving otherwise. *Forrest*, 290 S.W.3d at 708.

 Although a movant must overcome a strong presumption that counsel provided effective assistance, counsel must make a reasonable decision not to conduct a particular investigation. *State v. Butler*, 951 S.W.2d 600, 608 (Mo. banc 1997). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation on investigation." *Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052. "Reasonable choices of trial strategy, no matter how ill fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Clayton v. State*, 63 S.W.3d 201, 206 (Mo. banc 2001).

*Point I—Failure to Call Wife as a Witness*

 Movant's first point claims Trial Counsel was ineffective for failing to call Wife as a witness at trial to provide Movant's alibi defense and buttress Movant's mistaken-identity defense.

 To prevail on a claim for ineffective assistance of counsel for failure to call a witness, a movant must show: 1) trial counsel knew or should have known of the existence of the witness; 2) the witness could be located through reasonable investigation; 3) the witness would testify; and 4) the witness's testimony would have produced a viable defense. *Williams v. State*, 168 S.W.3d 433, 441 (Mo. banc 2005). "The selection of witnesses and evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance

claim." *Edwards v. State*, 200 S.W.3d 500, 518 (Mo. banc 2006).

Movant argues that Wife would have presented "relevant, potentially exculpatory, and corroborative evidence that was not otherwise presented at trial." However, Movant admits that Wife "could not provide [him] with a complete alibi." Instead, Movant argues that Wife's testimony "could only have helped, and not hurt, [his] chances of an acquittal at trial" because it was corroborative of his mistaken-identity defense. Movant argues that Wife would have testified that she was with Movant immediately prior to the time of the offense and that he was not in White's car. Movant claims that Wife's testimony "would have created reasonable doubt about [Movant's] guilt by making it much less likely that [Movant] was driving [White's] red Ford Focus only minutes to an hour later." We disagree.

We agree with the motion court that Trial Counsel made a reasonable strategic decision not to call Wife as a witness for several sound reasons. Even if, in hindsight, Trial Counsel's reasons proved unsuccessful because she did not receive a "not guilty" verdict, we will not deem her ineffective. *See Clayton*, 63 S.W.3d at 206. However, here Trial Counsel's strategy explained during the evidentiary hearing was deliberate and logical. Trial Counsel methodically considered the option of calling Wife as a witness and decided against it as a matter of trial strategy.

■ First, even if Wife had testified that she was with Movant immediately prior to the time he allegedly committed the offenses, Wife could not provide an alibi because she could not testify that she was with Movant during the time the offenses took place. Wife also admitted that she did not know whether Movant had committed the offenses. An alibi is "a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it *impossible* for defendant to be the guilty party." *Williams v. State*, 8 S.W.3d 217, 220 (Mo.App. E.D.1999) (internal citations omitted). We will not find Trial Counsel ineffective for failing to call a witness whom Trial Counsel believed would not unequivocally support Movant's defense. *See Childress v. State*, 248 S.W.3d 653, 655 (Mo.App. S.D.2008) (counsel not deemed ineffective for failing to call a witness who did not establish an alibi, or corroborate or strengthen appellant's testimony because "she could not account for enough time to make any difference."). Wife did not unequivocally support Movant's defense and her testimony would not have provided an alibi for Movant.

■ Further, Wife's testimony would have hindered Movant's defense for other reasons. Wife's testimony would have placed Movant in close proximity to the crime scene, and her appearance matched the general description of Movant's getaway driver. If a potential witness's testimony could place a defendant within close proximity to a crime scene, defense counsel reasonably may decide not to call that witness. *See State v. Dixon*, 969 S.W.2d 252, 257 (Mo.App. W.D.1998) (counsel used trial strategy and was not ineffective for failing to call witness whose testimony would have placed defendant near crime scenes hours before crimes were committed and had doubts about defendant's proposed alibi testimony). Trial Counsel considered these reasons and, as a matter of trial strategy, decided not to call Wife as a witness so that jurors did not "draw a parallel between [Movant] and [Wife]" to hinder Movant's defense of mistaken identity.

After considering the facts presented in the evidentiary hearing, we find that Trial Counsel's complete investigation into

Wife's testimony and methodical decision not to call Wife as a witness was a matter of reasonable trial strategy. The record does not support Movant's claim that Trial Counsel was ineffective for her decision against calling Wife as a witness. Point I is denied.

*Point 2—Failure to Impeach White*

In his second point, Movant alleges that the motion court clearly erred in denying his Rule 29.15 motion because Trial Counsel was ineffective for failing to impeach the State's key witness, White, with a letter she wrote to Movant before trial. Movant argues that White's statement in the letter constitutes a prior inconsistent statement from her trial testimony that she loaned Movant her car on July 7, 2007. Movant argues that the statements in White's letter were not ambiguous and there was no question that jurors would have concluded that Movant had been with someone else at the time of the charged offenses. Movant urges this Court to find error in the motion court's ruling because impeachment of White's testimony "was paramount." We disagree.

Failure to impeach a witness does not generally warrant relief for ineffective assistance of counsel where the facts, even if true, do not establish a defense. *State v. Day,* 859 S.W.2d 194, 196 (Mo.App. E.D.1993). The decision to impeach is presumed to be a matter of trial strategy, and to overcome such presumption, a movant must demonstrate that the decision was not a matter of trial strategy and that the impeachment would have provided him with a defense or would have changed the outcome of the trial. *State v. Gollaher,* 905 S.W.2d 542, 548 (Mo.App. E.D.1995). It is a reasonable strategic choice to decline to impeach a witness with certain evidence if it will prevent other, adverse evidence from being admitted. *See Storey v. State,* 175 S.W.3d 116, 127–28

(Mo. banc 2005) (counsel not ineffective for declining to impeach sheriff with deposition where deposition might open door to evidence of defendant's prior offenses).

After reviewing the record, we find that Trial Counsel reasonably believed that introducing the letter to impeach White's testimony would hinder, not help Movant's defense. Trial Counsel testified at the evidentiary hearing that she thought the letter's statements suggested an invitation to provide false testimony to protect Movant, and that the letter would undermine the defense theory that White was lying at trial because she was angry at Movant for philandering. Trial Counsel testified that the phrase, "it is the truth" seemed like a transparent attempt to bolster the statement's credibility, and Trial Counsel thought it would "strike a jury badly and not come off as being truthful at all."

Further, Trial Counsel explained during the evidentiary hearing that she decided not to impeach White with the letter to prevent the State from responding with damaging rebuttal evidence, including Movant's threats against White. Trial Counsel also believed that if she presented White's letter to the jury, it would force her to put on the alibi defense involving Wife. Although Trial Counsel recognized that she could have impeached White with the letter, she made a strategic decision not to do so.

This Court finds that Trial Counsel's decision not to impeach White was made with sound judgment based on Trial Counsel's reasonable trial strategy. We find that the letter, poorly written, was indeed ambiguous and could have opened the door to much more unfavorable evidence against Movant. Movant here has not overcome the presumption that Trial Counsel's decision not to impeach White's testimony with the letter was a matter of trial strategy. We find no reasonable

probability that White's impeachment testimony would have changed the outcome of trial. Movant's second point is denied.

*Conclusion*

The motion court's judgment is affirmed.

GEORGE W. DRAPER III, J. and GARY M. GAERTNER, JR., J., Concur.