

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| JOHN KING, | ) | No. ED103672 |
| Appellant, | ) ) | Appeal from the Circuit Court of the City of St. Louis |
| vs. | ) ) | Honorable Thomas J. Frawley |
| STATE OF MISSOURI, | ) ) | |
| Respondent. | ) | FILED: December 6, 2106 |

## Introduction

John King ("King") was convicted in the City of St. Louis on one count of deviate sexual assault and was sentenced to fifteen years in prison. We affirmed King's conviction and sentence on direct appeal. State v. King, 440 S.W.3d 517 (Mo. App. E.D. 2014). King now appeals from the motion court's denial of his amended Rule 29.15[1] motion following an evidentiary hearing. King alleges ineffective assistance of counsel because trial counsel failed to offer Victim's medical records and King's St. Louis Community Release Center ("SLCRC") records into evidence. Because King cannot establish that trial counsel used an unreasonable trial strategy, the motion court did not clearly err in denying King's amended Rule 29.15 motion. We affirm the judgment of the motion court.

---

[1] All rule references are to Mo. R. Crim. P. (2015).

## Factual and Procedural History

The State charged King with two counts of deviate sexual assault in his original trial. The State alleged that between February 14, 2009, and September 4, 2011, King had deviate sexual intercourse with his stepson ("Victim"). The case proceeded to a jury trial.

At trial, Victim testified that King had anal intercourse with him twenty times after Victim's high school graduation but before his nineteenth birthday. Victim graduated from high school on May 18, 2009, and turned nineteen on February 14, 2010. The alleged abuse occurred in Victim's bedroom at his mother's residence on Saturdays, while his mother attended church and Victim was alone with King. Victim recalled that the sexual acts "felt pretty bad." The State also presented evidence that Victim was at the same developmental level as a seven-to-eight-year-old child.

The State introduced into evidence a video of Victim's interview with the Child Advocacy Center ("CAC") on September 13, 2011. In the CAC video, Victim stated that he was "made to remove" his clothing and was told to not tell anyone. Victim remembered that King would place his penis into Victim's butt and sometimes call out Victim's name during the sexual acts. Victim recalled feeling pain, discomfort, and burning during the sexual acts.

At trial, one of King's defenses centered on Victim's prior recantations of the allegations. King presented the testimony of the former prosecutor in this case, Colleen Lang ("Lang"), who testified that Victim recanted his allegations during a meeting that occurred after Victim's CAC interview. On cross-examination, Lang stated that Victim later reasserted that King sexually abused him and that his desire to forget about the experience caused his recantation at the meeting. King's brothers also testified that Victim informed them that King "didn't do it" in a five-way phone conversation with members of King's family. The State argued that this recantation occurred when King's family members "ganged-up" on Victim.

2

King also contended that Victim admitted to hospital personnel, during an emergency room visit on September 15, 2011, that he had not experienced any threats or abuse. Victim recalled at trial that he told hospital personnel that "[n]o, I was no threats or no abuse no nothing … I wasn't hurt by anybody else." Medical records from this emergency room visit noted that Victim "denies threats or abuse. Denies injuries from another." The medical records also stated that Victim's rectum was "unremarkable by inspection other than poor wiping technique." Trial counsel did not offer Victim's medical records into evidence.

The jury found King guilty of one count of deviate sexual assault and acquitted him of one count of deviate sexual assault. Finding King a prior and persistent offender, the trial court sentenced him to fifteen years in prison. After we affirmed his judgment and sentence on direct appeal, King filed an amended Rule 29.15 motion and alleged that he received ineffective assistance of counsel. King claimed that trial counsel was ineffective by failing to offer Victim's medical records into evidence because they confirmed Victim's denial of abuse to hospital personnel. King also claimed that trial counsel was ineffective for failing to offer the SLCRC records into evidence, which King believes would have established a partial alibi and contradicted Victim's testimony by narrowing the possible dates that he could have been alone with Victim while Victim's mother was at church.

At the evidentiary hearing, King testified that he was a resident at the SLCRC from September 20, 2008, until July 7, 2010. The SLCRC documented King's absences from its premises. King stated that he was not permitted to visit family members, such as Victim, except for a four-hour period on weekends. King testified that he often scheduled his family visits during the evening. Victim's mother attended church on Saturdays from ten in the morning until four or five in the evening. The SLCRC records only showed seven Saturdays between May 18,

3

2009, and February 14, 2010, on which King checked out during the morning or early afternoon for potential family visits. King contended that these seven Saturdays were the only possible times he could have been at Victim's residence while Victim's mother was at church.

Trial counsel also testified at the evidentiary hearing. Regarding Victim's medical records, King's trial counsel testified that he had reviewed and considered the records prior to trial. Trial counsel explained his purpose in wanting to establish a rapport with the jury and believed that presenting Victim's medical records, which were created a year and half after the alleged abuse occurred, would have hampered this effort. Additionally, trial counsel determined that Victim's medical records were cumulative, as witnesses' testimony "more or less" introduced the contents of the medical records into evidence. Trial counsel asserted that he "did not want it to come across at trial that I was hanging my hat on one statement in a medical record that on recross or rebuttal from the State a witness could have gotten up and said this is a question that is asked very quickly." Trial counsel wanted to rely on witnesses' testimony over "a few words pulled from a medical record that didn't have context."

Regarding the SLCRC records, trial counsel recalled that he also had received and considered these records before trial. Trial counsel remembered "debating" whether or not to use the SLCRC records in King's defense before deciding not to introduce the records into evidence at trial. Trial counsel considered as a "factor" in his decision the fact that the SLCRC records were records of the Missouri Department of Corrections. Trial counsel also testified that he had been informed by State that a rebuttal witness was available to testify that the SLCRC records were unreliable and inaccurate. Finally, trial counsel reasoned that the vague timeline as to when the charged crimes occurred decreased the effectiveness of a partial alibi defense.

4

The motion court denied King's amended Rule 29.15 motion after the evidentiary hearing. The motion court found, as to both claims, that trial counsel made a reasonable, strategic decision not to use the respective records. The motion court also found that trial counsel's decision not to use Victim's medical records did not prejudice King because this information came into evidence through other testimony. This appeal follows.

## Points on Appeal

King raises two point on appeal. King contends that the motion court erred in denying his amended Rule 29.15 motion alleging ineffective assistance of counsel because reasonably competent trial counsel would have introduced both records into evidence. King first argues that competent trial counsel would have offered Victim's medical records into evidence to show that Victim denied any claims of abuse only two days after his CAC interview and that Victim showed no signs of permanent injury or anal scarring during the medical examination. King next asserts that competent trial counsel would have offered the SLCRC records into evidence to establish a partial alibi defense and to impeach Victim's claim that King abused him twenty times.

## Standard of Review

We review the judgment on a Rule 29.15 motion for post-conviction relief to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); Moore v. State, 328 S.W.3d 700, 702 (Mo. banc 2010). A motion court's findings of fact and conclusions of law are clearly erroneous only if our review of the full record leaves us with "a definite and firm impression that a mistake has been made." Moore, 328 S.W.3d at 702. The motion court's ruling is presumptively correct, and we will defer to the motion court's determinations of credibility. Forrest v. State, 290 S.W.3d 704, 708, 715 (Mo. banc. 2009).

5

Discussion

King's two points on appeal both argue that he received ineffective assistance of trial counsel. A defendant's right to counsel, as guaranteed by state and federal constitutions, includes the right to effective assistance of counsel. Ervin v. State, 80 S.W.3d 817, 821 (Mo. banc 2002). Failure to receive effective assistance of counsel can form the basis of a claim for post-conviction relief. Rule 29.15(a); Williams v. State, 168 S.W.3d 433, 439 (Mo. banc 2005).

To succeed on a motion for post-conviction relief for ineffective assistance of counsel, a movant must satisfy the two-prong Strickland test by a preponderance of the evidence. Zink v. State, 278 S.W.3d 170, 175–76 (Mo. banc. 2009) (referencing Strickland v. Washington, 466 U.S. 668 (1984)). The first prong requires a showing that the trial counsel "failed to exercise the level of skill and diligence that a reasonably competent counsel would exercise in a similar situation." Id. at 175 (citing Strickland, 466 U.S. at 687). There is a strong presumption that trial counsel's conduct was reasonable and effective. McIntosh v. State, 413 S.W.3d 320, 324 (Mo. banc 2013). In order to overcome this presumption, the movant must show "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Id. (quoting Zink, 278 S.W.3d at 176). A decision of trial strategy may only serve as a basis for a claim of ineffective assistance of counsel if the decision is unreasonable. McLaughlin v. State, 378 S.W.3d 328, 337 (Mo. banc 2012). Choosing one reasonable trial strategy over another is not ineffective assistance of counsel. Id. Strategic choices made by trial counsel after a thorough investigation of the law and facts applicable to the case are virtually unchallengeable. Barton v. State, 432 S.W.3d 741, 749 (Mo. banc 2014).

The second prong requires a showing that the movant was prejudiced by trial counsel's deficient performance. Davis v. State, 486 S.W.3d 898, 906 (Mo. banc 2016). The movant must demonstrate that, absent the purported errors by trial counsel, there is a reasonable probability

6

that the result of the proceeding would have been different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Baumruk v. State, 364 S.W.3d 518, 525 (Mo. banc. 2012) (citing Edwards v. State, 200 S.W.3d 500, 518 (Mo. banc. 2006)). If the movant fails to prove either prong, then we need not consider the remaining prong, and the movant's claim of ineffective assistance of counsel must necessarily fail. Bradley v. State, 292 S.W.3d 561, 565 (Mo. App. E.D. 2009).

## I.    Point One—Victim's Medical Records

King first argues that trial counsel was ineffective for not offering into evidence the medical records from Victim's visit to the emergency room, which occurred two days after Victim's CAC interview. King maintains that the medical records would have effectively impeached Victim's allegations that King abused him twenty times by establishing that Victim's medical examination revealed no signs of permanent injury or anal scarring. King posits that the medical records were not cumulative to other evidence in the record because Victim's trial testimony about his statements to hospital personnel was unclear. King asserts that, but for this failure of trial counsel, there is a reasonable probability that the outcome of the trial would have been different.

We give trial counsel wide latitude in the introduction of evidence. See State v. Mahoney, 165 S.W.3d 563, 566 (Mo. App. S.D. 2005). Trial counsel's strategic decision on the admission of evidence that he or she has received generally is not disturbed by a court on review. See Forrest, 290 S.W.3d at 708. Failure to offer impeachment evidence does not necessarily render counsel's assistance ineffective. White v. State, 939 S.W.2d 887, 897 (Mo. banc 1997). The extent and manner of impeachment is a matter of trial strategy best left to the judgment of trial counsel. Id. Indeed, trial counsel may fairly determine that the use of certain impeachment

7

evidence may cause his or her client more harm than benefit. State v. Hall, 982 S.W.2d 675, 686 (Mo. banc 1998).

We are not left to speculate as to counsel's decision-making process with regard to his trial strategy as trial counsel testified at the evidentiary hearing. Trial counsel's testimony shows that he had received Victim's medical records before trial and that he consciously weighed the consequences of offering the emergency room records into evidence. The motion court found trial counsel's testimony to be credible. We defer to the motion court's credibility determinations, and we are reluctant to disturb trial counsel's decisions made after a thorough investigation of the applicable law and facts. Forrest, 290 S.W.3d at 708, 715.

Further, King overstates the significance and clarity of Victim's medical records. The statements by Victim to the hospital personnel occurred at least a year and half after the alleged abuse and in the context of Victim receiving medical treatment for "holding in" a bowel movement. The medical records are unclear as to what Victim meant by his denial of abuse. For example, Victim might have meant that he had never been abused, that he was not currently being abused, or that his current pain was unrelated to the charged acts of abuse. The record does not reveal how hospital personnel posed the question to Victim or, given Victim's mental acuity, if Victim even understood the question in the form asked. Trial counsel testified that he was concerned the State could rebut the effectiveness of the medical record by explaining the likely context of the question asked of Victim: hospital personnel asked the question quickly, while Victim was in pain and was undergoing medical treatment for an issue unrelated to the past abuse. It is reasonable strategy for trial counsel not to present impeachment evidence that might be easily explained on rebuttal, thereby potentially resulting in trial counsel's loss of credibility

8

before the jury. See White, 939 S.W.2d at 897 (stating that some inconsistent statements are so explainable that their nonuse at trial is justified).

King also overstates the importance of Victim's medical records. Trial counsel presented extensive evidence of Victim's other recantations to the jury. There is no dispute that Victim recanted his accusations on at least two other occasions. In cross-examining a witness, trial counsel must decide as a matter of trial strategy the most effective manner in which to present impeachment evidence. See id. at 897–98; Tucker v. State, 468 S.W.3d 468, 474–75 (Mo. App. E.D. 2015). Trial counsel testified that he wanted to focus the jury's attention on Victim's other recantations and did not want to "hang his hat" on one sentence from a record that the State could effectively rebut. Electing to highlight Victim's other recantations as testified to by live witnesses in the courtroom over a bare statement in the medical record that lacked context was a reasonable strategic decision. We will not second-guess trial counsel's decision, nor should we under our standard of review.

We also reject King's contention that a competent attorney would have introduced Victim's medical records into evidence because the records were admissible to prove that Victim was not sexually abused. Although the medical examination revealed no signs of anal scarring or other permanent injury, the emergency room visit occurred over a year and a half after the alleged abuse. Absent some evidence that such abuse would have necessarily resulted in permanent injury or anal scarring that would remain visible following such an extended period of time, King has not met his burden to show the admissibility of Victim's medical records on these grounds—much less that we would require competent counsel to introduce such evidence at trial.

The record establishes that trial counsel made a strategic decision regarding Victim's medical records. King failed to show that trial counsel's actions were unreasonable. Because

9

King failed to establish that trial counsel rendered ineffective assistance, we are not left with a definite and firm impression that a mistake has been made. Point One is denied.

## II.  Point Two—SLCRC Records

King next challenges the motion court's denial of his claim that trial counsel was ineffective for not offering the SLCRC records into evidence. King argues that the SLCRC records would have established a partial alibi and impeached Victim's claim that King abused him twenty different times. King asserts that, but for this failure of trial counsel, there is a reasonable probability that the outcome of the trial would have been different.

Again, trial counsel has wide latitude in developing evidence during trial, and the introduction of evidence is generally a matter of a trial strategy. State v. Dunmore, 822 S.W.2d 509, 512 (Mo. App. W.D. 1991). A reasonable strategic decision to employ a certain defense theory, even at the expense of another defense theory, does not support a claim for ineffective assistance of counsel. Whitt v. State, 366 S.W.3d 669, 674 (Mo. App. E.D. 2012). In order to argue that trial counsel was ineffective for failing to present evidence of an alibi, the evidence must constitute a viable defense. See Turner v. State, 384 S.W.3d 722, 724 (Mo. App. S.D. 2012).

First, we note that the SLCRC records would not have constituted a viable alibi defense. The State charged King with two counts of abuse from February 14, 2009, to September 4, 2011. Even if the SLCRC records limited the timeframe in which the acts of abuse may have occurred, the records plainly showed multiple opportunities for King to have sexually assaulted Victim in a manner consistent with Victim's testimony. The SLCRC records, *at most and if found definitive in establishing King's whereabouts*, would have merely limited the possible number of Saturdays during which King may have sexually assaulted Victim. The SLCRC records established that King checked out of the SLCRC during the morning or afternoon on at least seven Saturdays

10

during the timeframe of the alleged abuse. Consistent with Victim's testimony that the sexual abuse occurred while his mother was at church, the two charged acts of abuse could have happened on any one of those seven Saturdays. Alibi evidence that does not actually provide a viable defense to the charged crimes cannot entitle movant to post-conviction relief. Barmettler v. State, 399 S.W.3d 523, 531 (Mo. App. E.D. 2013).

King also argues that the SLCRC records could have been used to impeach Victim's testimony that there were twenty instances of sexual abuse. The decision to impeach a witness is presumed to be a matter of trial strategy. Wren v. State, 313 S.W.3d 211, 219 (Mo. App. E.D. 2010). Trial counsel makes a "reasonable strategic choice to decline to impeach a witness with certain evidence if it will prevent other, adverse evidence from being admitted." Id. When there are significant considerations weighing against its admission, we will not second-guess reasonable trial strategy that declines to introduce the evidence even when trial counsel's strategy does not result in the acquittal of all charges. See Whitt, 366 S.W.3d at 674.

Here, trial counsel testified that he had received the SLCRC records and "debated" offering them into evidence. Trial counsel contemplated the consequences of introducing the SLCRC records and explained the potential ramifications to both King and his family. In considering the evidence, trial counsel reasonably believed that offering the SLCRC records would hinder rather than aid King's defense. A competent attorney here may have concluded that the jury would want to know why King was monitored by the SLCRC and that the SLCRC records would associate and connect King to the Missouri Department of Corrections. Further, the admission of the SLCRC records may have increased the danger that the jury would hear evidence of King's past felony convictions. Trial counsel need not introduce evidence that would hinder rather than aid the defense at trial. See Wren, 313 S.W.3d at 219.

11

Additionally, trial counsel testified that the State informed him that it had a rebuttal witness who could establish that the SLCRC records were not definitive or accurate in establishing King's whereabouts, especially over the lengthy timeframe at issue. Trial counsel testified as to his concern that such a rebuttal witness would cause him to lose any credibility in the eyes of the jury. The preservation of trial counsel's credibility with the jury is a legitimate component of his or her trial strategy. See, e.g., State v. Taylor, 779 S.W.2d 636, 645 (Mo. App. W.D. 1989). The motion court found trial counsel's testimony to be credible. Credibility determinations are left to the motion court. Forrest, 290 S.W.3d at 715.

The record clearly shows that trial counsel made a reasonable, strategic decision not to offer the SLCRC records into evidence. Accordingly, King cannot establish that trial counsel rendered ineffective assistance. Because we are not left with a definite and firm impression that a mistake has been made, the motion court's denial of King's amended Rule 29.15 motion was not clearly erroneous. Point Two is denied.

## Conclusion

The judgment of the motion court is affirmed.

KURT S. ODENWALD, Judge

James M. Dowd, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

12