

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| SALVADOR TOLENTINO-GERONIMO, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD86603 |
| | ) | |
| STATE OF MISSOURI, | ) | Opinion filed:  December 24, 2024 |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF PETTIS COUNTY, MISSOURI**
**THE HONORABLE ROBERT KOFFMAN, JUDGE**

Division Two:  Alok Ahuja, Presiding Judge,
Edward R. Ardini, Jr., Judge and W. Douglas Thomson

Salvador Tolentino-Geronimo appeals the judgment of the Circuit Court of Pettis County denying his Rule 29.15 motion for postconviction relief after an evidentiary hearing. Tolentino-Geronimo was convicted, after a jury trial, of one count of first-degree rape and was sentenced to life imprisonment. The victim ("Victim") was Tolentino-Geronimo's eleven-year-old niece. Victim had also been sexually assaulted by her father, and in Tolentino-Geronimo's postconviction motion, he alleged his trial counsel was ineffective for failing to "properly raise" and introduce "evidence regarding [Victim's] father's crimes against her." Tolentino-Geronimo also asserted in his postconviction motion that the trial court's judgment contained a clerical error, in that it did not conform

to the oral pronouncement of his sentence. He requested a *nunc pro tunc* order to correct this error. The motion court denied Tolentino-Geronimo's claim of ineffective assistance of counsel and request for a *nunc pro tunc* order.

The State argues on appeal that Tolentino-Geronimo's claim of ineffective assistance of counsel is not properly before this Court because it was raised in an untimely amended postconviction motion. We disagree and find that Tolentino-Geronimo's amended motion was timely filed. We further find that the motion court did not clearly err in denying Tolentino-Geronimo's ineffective assistance claim, but—as the State concedes on appeal—the motion court did err in denying Tolentino-Geronimo's request for a *nunc pro tunc* order. Accordingly, we remand with directions that the criminal judgment be corrected, and affirm the motion court's judgment in all other respects.

**Factual and Procedural Background[1]**

*Underlying Criminal Case*

In June of 2017, Victim's friend contacted a detective with the Pettis County Sheriff's Office and provided information that prompted the detective to set up an interview for Victim at Child Safe, a child advocacy center. During the Child Safe interview, Victim disclosed that Tolentino-Geronimo had raped her. Following an investigation, Tolentino-

---

[1] "On appeal from the motion court's ruling on a 29.15 motion, we view the facts in the light most favorable to the verdict." *Goodwater v. State*, 560 S.W.3d 44, 49 n.1 (Mo. App. W.D. 2018). The facts of the underlying case are in part summarized from our opinion affirming Tolentino-Geronimo's conviction on direct appeal in *State v. Tolentino-Geronimo*, 571 S.W.3d 214 (Mo. App. W.D. 2019), without further attribution.

Geronimo was charged with rape in the first degree (victim less than twelve years of age) pursuant to section 566.030, RSMo.[2]

At trial, Victim testified that one afternoon near the end of fifth grade—which was in the year 2014—she visited the home of Tolentino-Geronimo and his wife, who was her aunt ("Aunt"). Victim was in the main bedroom watching television with Tolentino-Geronimo and his infant son, when Aunt said she was going to take a shower. After Aunt went to shower, Tolentino-Geronimo began touching Victim's chest "inappropriately." He then held Victim down, pulled her pants down, and put his penis in her vagina, but it was painful and "difficult to go in." Victim testified that she was uncomfortable and she believed Tolentino-Geronimo saw her discomfort, so he stopped; Victim then pulled up her pants and ran from the house. Victim told Aunt about the rape in a text message, and Aunt offered to take Victim for a rape examination, but Victim refused, causing Aunt to conclude that Victim was lying. Because Aunt did not believe her, Victim did not tell her parents or anyone else about the rape, fearing that no one would believe her. Victim also acknowledged that she had stolen money from Tolentino-Geronimo around the time of the rape, but she insisted that the money had nothing to do with her allegation.

The jury found Tolentino-Geronimo guilty of first-degree rape. At the sentencing hearing, the trial court orally sentenced Tolentino-Geronimo "in accordance with [section 566.030], [to] serve life without parole under the statute as defined." The written judgment

---

[2] All references to section 566.030 in this opinion are to RSMo Cum. Supp. 2013. All other statutory references are to RSMo 2016.

provided that Tolentino-Geronimo was sentenced to "[l]ife without parole." Tolentino-Geronimo's conviction was affirmed on appeal.

*Postconviction Proceedings*

The appellate court mandate was issued on May 1, 2019. On July 30, 2019, Tolentino-Geronimo's Rule 29.15 motion was timely filed.[3] The motion was signed and subscribed by Tolentino-Geronimo, but it was electronically filed by an attorney ("Filing Attorney").

On September 6, 2019, PCR Counsel filed an entry of appearance "as attorney of record for" Tolentino-Geronimo. PCR Counsel and Filing Attorney worked at the same law firm. Later that afternoon, Filing Attorney filed a motion for extension of time, requesting the motion court grant Tolentino-Geronimo a thirty-day extension to file his amended motion pursuant to Rule 29.15(g). The motion court granted that request, and an amended motion was filed on December 5, 2019.

In his amended motion, Tolentino-Geronimo asserted Trial Counsel was ineffective by failing to "properly use evidence of other abuse." He alleged that in 2017, "a few months before" Victim accused Tolentino-Geronimo of rape, Victim's father ("Father") was "arrested and charged with continually raping [Victim] for many years previous, beginning in around 2014." He alleged that Victim was interviewed at Child Safe on April 7, 2017 about her father, and during that interview she "said nothing about that she had been raped" by Tolentino-Geronimo.

---

[3] Rule references are to the Missouri Supreme Court Rules (2019).

4

Tolentino-Geronimo alleged that Trial Counsel "was aware of the prior allegation of sexual abuse by [Father]," and "[h]ad counsel properly noticed up and litigated the rape shield matters in this case, it is likely that the issues would have fully been explored by counsel and the court, and certain helpful evidence admitted trial." Tolentino-Geronimo asserted that Missouri's "rape shield" statute (section 491.015) "would not have barred evidence that [Father] had been credibly accused of raping [Victim]—the evidence would not be of [Victim's] 'prior sexual conduct' but that her father had been charged with raping her, and had fled the country, which would have provided additional support for [Tolentino-Geronimo's] credible defense that [Victim] had accused him of an act of rape to deflect attention from the fact she had been caught by her  mother stealing money from [Tolentino-Geronimo] and his wife." He further alleged that "[w]ithout knowledge of the charges against [Father], the jury was left to speculate how an 11-year-old would be familiar with sexual intercourse so as to fabricate it in the manner alleged by the defense."

The amended motion also requested a *nunc pro tunc* order to "correct the written judgment in this case to reflect the oral sentencing pronouncement and to conform with § 566.030.2." Tolentino-Geronimo asserted that he "was convicted under subsection two [of section 566.030], providing for a possibility of parole after 30 years, or after 15 years at the age of 75," but that "the written sentence and judgment in this matter states the sentence as 'life without parole,'" and "such sentence is reflected in the records of the Missouri Department of Corrections at this time." He contended that the "written sentence and judgment of the trial court should reflect the oral pronouncement of the sentence."

5

The motion court held an evidentiary hearing. At the hearing—pursuant to the parties' agreement—the motion court "t[ook] up the case on the pleadings" and the deposition of Trial Counsel. Trial Counsel testified at his deposition that he chose not to file notice under the rape shield statute "to try to get into the prior sexual activity" of Victim related to her father. He stated:

> I thought a lot about it, what I wanted to have the jury focused on at trial was the young woman's credibility, the issues that she had in terms of admittingly haven [sic] stolen from [Tolentino-Geronimo] and the linkage between that and the date of the initial allegation back when she was 11-years-old. I frankly was concerned when talking about the young lady being raped by her father repeatedly would create frankly some sympathy for her, that would potentially negate the animas [sic] that I hoped to create with her acknowledgment of being an acknowledged thief and her unwillingness to undergo a SAFE examination.

Trial Counsel further testified that he was aware of the exceptions to the rape shield statute. When asked if the evidence of assault by Victim's father could explain "precocious sexual knowledge" that Victim may have had, Trial Counsel stated he "did take into account that at the time she was testifying, she was 15-years-old," and his "feeling was that most jurors will believe that 15-year-old woman [sic] or young ladies have some knowledge about those things anyway."

The motion court entered its judgment denying Tolentino-Geronimo's claim of ineffective assistance of counsel. The motion court found that "defense counsel has shown acceptable trial strategy in his conducting of the jury trial," and he "did not fail to exercise the customary skill and diligence of a reasonable competent attorney under similar circumstances." The motion court further found that:

6

[T]he rape shield statute applied and that no exception under that statute was applicable in the movant's criminal case. The prejudice raised by the movant is that the previous sexual contact evidence of the victim would have established her ability to describe sexual activities, as well as body parts in a rather sophisticated fashion. The victim did not testify at trial about sexual contact in a sophisticated fashion. Her chastity was not an issue in the case and was not argued by either side. The previous rape allegation against her father does not prove or disprove her veracity in the present case nor is such probative of an issue in the case as it relates to precocious sexual knowledge. Whether the child had been raped previously by her father does not impeach her allegations made at trial and is not likely to change the outcome of a subsequent trial.

The motion court also denied Tolentino-Geronimo's request for a *nunc pro tunc* order to amend the judgment, stating Tolentino-Geronimo "was charged under section § 566.030 RSMO and the judgment reflects that the defendant received the sentence authorized by law. The Court finds no grounds to amend the judgment."

Tolentino-Geronimo appeals.

**Standard of Review**

"This Court reviews the denial of post-conviction relief to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016) (citing Rule 29.15(k)). "The movant bears the burden of establishing clear error, as we presume the motion court's findings are correct." *Flenoy v. State*, 446 S.W.3d 297, 301 (Mo. App. W.D. 2014). "The motion court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression a mistake has been made." *Id.* (internal marks omitted).

7

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test . . . ." *Davis*, 486 S.W.3d at 905 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "Under *Strickland*, Movant must demonstrate that: (1) his trial counsel failed to exercise the level of skill and diligence that a reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure." *Id.* at 906.

To demonstrate the first prong—or the "performance" prong of the *Strickland* test— the movant "must overcome the strong presumption that trial counsel's conduct was reasonable and effective." *Id.* "To overcome this presumption, a movant must identify specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id.* (internal marks omitted). "Trial strategy decisions may be a basis for finding ineffective assistance of counsel only if that decision was unreasonable." *Id.*

To establish prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Deck v. State*, 68 S.W.3d 418, 429 (Mo. banc 2002). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

**Analysis**

*Timeliness of Amended Motion*

Before reaching Tolentino-Geronimo's points of error on appeal, we first address the State's argument that Tolentino-Geronimo's claim of ineffective assistance of counsel "is not properly before this Court as the claim was not in his initial motion and his amended

8

motion was untimely." The State asserts that Tolentino-Geronimo's amended motion was untimely because it was not filed within ninety days of counsel's entry of appearance. The State contends that the "entry of appearance" which triggered the running of the ninety-day deadline was Filing Attorney's e-filing of Tolentino-Geronimo's initial Rule 29.15 motion. We disagree.

Rule 55.03(b) governs entries of appearance. It provides that an attorney appears in a case by:

(1) Participating in any proceeding as counsel for any party unless limited by an entry of limited appearance;

(2) Signing the attorney's name on any pleading, motion, or other filing; however, if an attorney is identified on a pleading, motion, or other filing as having only assisted in the preparation of the pleading, motion, or other filing, the attorney has not entered an appearance in the matter; or

(3) Filing a written entry of appearance. . . .

Rule 55.03(b).

Filing Attorney did not engage in any of the activities described in Rule 55.03(b) when she e-filed Tolentino-Geronimo's initial Rule 29.15 motion: she did not participate in any proceeding as counsel for Tolentino-Geronimo; she did not sign her name on any pleading, motion, or other filing; and she did not file a written entry of appearance. Rather, she e-filed a motion for an individual, and only the individual's name and signature appeared on the motion. Rule 55.03(b) does not designate such action as entering an appearance on that individual's behalf. Accordingly, we find Filing Attorney did not enter her appearance on behalf of Tolentino-Geronimo when she e-filed his initial Rule 29.15 motion. *Cf. Cooper v. State*, 675 S.W.3d 718, 721 (Mo. App. S.D. 2023) (finding retained

9

counsel entered his appearance by signing *his name* to the movant's initial Rule 29.15 motion and filing it).

It was not until September 6, 2019—when PCR Counsel filed his "Entry of Appearance"—that an attorney entered their appearance on Tolentino-Geronimo's behalf.[4] Tolentino-Geronimo's deadline to file an amended motion began running on that date. *See* Rule 29.15(g) (an amended motion "shall be filed within 60 days of the earlier of the date both the mandate of the appellate court is issued and: (1) Counsel is appointed, or (2) An entry of appearance is filed by any counsel that is not appointed but enters an appearance on behalf of movant"). Tolentino-Geronimo thereafter received a thirty-day extension of time to file his amended motion, and timely filed said motion on December 5, 2019. Accordingly, the claim of ineffective assistance of counsel that was raised in Tolentino-Geronimo's amended motion is properly before this Court.

*Ineffective Assistance of Counsel*

In his first point, Tolentino-Geronimo asserts Trial Counsel rendered ineffective assistance in that he "failed to present admissible evidence that [Father] had been charged with sexually molesting [Victim], and its omission prejudiced Mr. Tolentino-Geronimo because had the jury learned of the additional instance of sexual molestation, its view of [Victim's] credibility when she described the charged conduct would have been affected, and there is a reasonable probability of a different outcome at trial." Tolentino-Geronimo contends that the motion court incorrectly ruled the rape shield statute "would have

---

[4] Later that day, Filing Attorney entered her appearance on behalf of Tolentino-Geronimo when she filed a motion for extension of time that contained her signature. *See* Rule 55.03(b)(2).

10

prevented any impeachment of [Victim] with questions about her allegations concerning her father," and "had trial counsel sought to question [Victim] about her allegations against her father, such questioning would have been admissible despite the rape shield law." However, we find the rape shield statute would have prevented the admission of evidence relating to Father's sexual abuse of Victim. Moreover, even if such evidence was admissible, Trial Counsel made a reasonable strategic decision not to present this evidence, and as a result did not render ineffective assistance of counsel.

Section 491.015—referred to as the rape shield statute—"creates a presumption that a victim's prior sexual conduct is not relevant to sex-crime prosecutions." *State v. Beck*, 557 S.W.3d 408, 423 (Mo. App. W.D. 2018). "This statute provides that 'evidence of specific instances of the complaining witness' prior sexual conduct . . . is inadmissible,' unless one of the four exceptions listed in the statute applies." *Id.* (quoting § 491.015.1).[5] The presumption is also subject "to a judicially created exception based on a criminal

---

[5] These exceptions are:

> (1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime; or
>
> (2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;
>
> (3) Evidence of immediate surrounding circumstances of the alleged crime; or
>
> (4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

§ 491.015.1.

defendant's right to a fair trial required by the concept of due process." *State v. Cooper*, 581 S.W.3d 677, 681 (Mo. App. S.D. 2019). Under this judicially created exception, if "the State seeks to introduce evidence to prove a defendant's guilt or draw for the jury an inference from which to show a defendant's guilt, the rape shield statute may not be used to prohibit the defendant from introducing contrary evidence without violating a defendant's constitutional right to a fair trial." *Id.* at 681-82 (quoting *State v. Gorman*, 468 S.W.3d 428, 434 (Mo. App. W.D. 2015)).

Tolentino-Geronimo invokes this judicially created exception in arguing he was entitled to present evidence of Father's sexual abuse of Victim. But "the judicially created 'right to a fair trial' exception to section 491.015 does not apply when the evidence is relevant merely to impeach a victim's credibility and does not directly refute evidence that tends to show a defendant's guilt." *Cooper*, 581 S.W.3d at 682. Thus, contrary to Tolentino-Geronimo's assertion, the rape shield statute would prevent Victim from being impeached with questions concerning Father's sexual abuse. *See id.*; *see also Beck*, 557 S.W.3d at 424-25 (the rape shield statute prevented the defendant from eliciting evidence that the victim had made inconsistent statements about whether anyone else had sexually abused her).

Tolentino-Geronimo also contends that "the prior rape [of Victim] was clearly relevant to [her] sexual knowledge and description of Mr. Tolentino's behavior." But "[i]f the state does not attempt to use evidence of a victim's unusual sexual knowledge to establish Defendant's guilt, the Defendant is not constitutionally entitled to present evidence about any past abuse or present other evidence of that abuse." *State v. Sittner*, 294

12

S.W.3d 90, 91 (Mo. App. E.D. 2009) (citing *State v. Sales*, 58 S.W.3d 554, 558-59 (Mo. App. W.D. 2001)). Here, a review of the record reveals that the State did not seek to establish Victim had unusual or precocious sexual knowledge to establish Tolentino-Geronimo's guilt. Moreover, the motion court found that Victim "did not testify at trial about sexual contact in a sophisticated fashion," and Tolentino-Geronimo has not challenged that finding on appeal. For these reasons, we find Tolentino-Geronimo was not constitutionally entitled to present evidence of Victim's past sexual abuse, and thus the motion court did not clearly err in finding that "the rape shield statute applied" and "no exception under that statute was applicable."

However, even if the rape shield statute did not apply, and evidence of Father's abuse of Victim were admissible, we would still find Trial Counsel provided effective assistance. The selection of evidence is a matter of trial strategy, which is "virtually unchallengeable in an ineffective assistance claim." *Johnson v. State*, 406 S.W.3d 892, 900 (Mo. banc 2013); *see also King v. State*, 505 S.W.3d 419, 424 (Mo. App. E.D. 2016) ("We give trial counsel wide latitude in the introduction of evidence," and "[t]rial counsel's strategic decision on the admission of evidence that he or she has received generally is not disturbed by a court on review."). Accordingly, "[f]ailure to offer impeachment evidence does not necessarily render counsel's assistance ineffective," as "[t]he extent and manner of impeachment is a matter of trial strategy best left to the judgment of trial counsel." *King*, 505 S.W.3d at 424.

"A decision of trial strategy may only serve as a basis for a claim of ineffective assistance of counsel if the decision is unreasonable." *Id*. Thus, "[t]he question in an

13

ineffective assistance claim is not whether counsel could have or even, perhaps, should have made a different decision, but rather whether the decision made was reasonable under all the circumstances." *Johnson*, 406 S.W.3d at 901.

Here, Trial Counsel made the strategic decision not to present evidence that Father sexually abused Victim, and Tolentino-Geronimo failed to prove that decision was unreasonable. Trial Counsel testified that he was aware of the rape shield statute and its exceptions, and he "thought a lot about" whether he should "try to get into the prior sexual activity" of Victim related to her father. He stated that he ultimately chose not to seek admission of such evidence because he "wanted to have the jury focused on . . . issues that she had in terms of admittingly haven [sic] stolen from" Tolentino-Geronimo, and Trial Counsel was concerned that "talking about [Victim] being raped by her father repeatedly would create" sympathy for Victim and negate the animus that Trial Counsel "hoped to create with her acknowledgment of being an acknowledged thief and her unwillingness to undergo a SAFE examination." Trial Counsel also stated that he did not think evidence of Father's abuse would explain "precocious sexual knowledge," given that Victim testified at trial when she was 15 years old, and "most jurors will believe that 15-year-old" women "have some knowledge about those things anyway."

Trial Counsel's strategic decision not to present this impeachment evidence was made after a thorough investigation of the law and facts. "Strategic choices made by trial counsel after a thorough investigation of the law and facts applicable to the case are virtually unchallengeable." *King*, 505 S.W.3d at 424. Under these circumstances, Trial Counsel's strategic decision was reasonable. *See Byrd v. State*, 329 S.W.3d 718, 726 (Mo.

14

App. S.D. 2010) ("A strategic choice to either limit or not impeach a witness at all for fear that doing so would alienate the jury or create sympathy for the State's witnesses is a reasonable one."); *King*, 505 S.W.3d at 424-25 ("trial counsel may fairly determine that the use of certain impeachment evidence may cause his or her client more harm than benefit").

The motion court did not clearly err in denying Tolentino-Geronimo's claim of ineffective assistance of counsel. Point I is denied.

*Nunc Pro Tunc Order*

In his second point, Tolentino-Geronimo asserts the motion court erred "in finding that [his] sentence was properly imposed." We agree, and the State concedes this claim of sentencing error.

The trial court orally sentenced Tolentino-Geronimo to "serve life without parole under the statute as defined." Section 566.030.2 sets forth the sentencing range for the offense of first-degree rape. If the victim is a child less than twelve years old, "the required term of imprisonment is life imprisonment without eligibility for probation or parole until the offender has served not less than thirty years of such sentence or unless the offender has reached the age of seventy-five years and has served at least fifteen years of such sentence[.]" § 566.030.2(2). The written judgment sets forth Tolentino-Geronimo's sentence length as "[l]ife without parole."

In his amended Rule 29.15 motion, Tolentino-Geronimo moved for a correction of "written sentence and judgment nunc pro tunc." He alleged the pronounced sentence was not correctly recorded in the judgment because it failed to reference his parole eligibility.

15

He therefore requested the motion court correct the written judgment to reflect the oral pronouncement of sentence. The motion court denied his request. We find this was error.

Where "the written judgment does not conform to the trial court's oral pronouncement of sentence, it contains clerical errors that may be corrected nunc pro tunc." *State v. Denham*, 686 S.W.3d 357, 371 (Mo. App. W.D. 2024). Here, the trial court stated at the sentencing hearing that Tolentino-Geronimo's sentence was life without parole "under the statute as defined." The statute defines Tolentino-Geronimo's sentence as "life imprisonment without eligibility for probation or parole until the offender has served not less than thirty years of such sentence or unless the offender has reached the age of seventy-five years and has served at least fifteen years of such sentence[.]" § 566.030.2(2).[6] Thus, the written judgment does not accurately reflect the oral pronouncement of sentence, and Tolentino-Geronimo is entitled to have the judgment corrected *nunc pro tunc. See Denham*, 686 S.W.3d at 371; *see also* Rule 29.12(c).

Point II is granted. We remand to the motion court with directions to correct the judgment in the underlying criminal case so that it comports with the oral pronouncement of sentence. *See* Rule 29.15(j) (the motion court has the authority to "correct the judgment and sentence as appropriate"); *see also McDonald v. State*, 77 S.W.3d 722, 727 (Mo. App. S.D. 2002) ("the motion court clearly had authority to amend the judgment in the criminal

---

[6] Although the statute does allow for an unqualified sentence of life without parole, that sentence is only available if the offense was "outrageously or wantonly vile, horrible or inhumane, in that it involved torture or depravity of mind." *See* § 566.030.2(3). There was no such pleading or finding in this case.

16

action pursuant to Rule 29.15(j)," and "such clerical mistakes in the judgment could have been corrected by a *nunc pro tunc* amendment pursuant to Rule 29.12(c)").

## Conclusion

We reverse the judgment to the extent that the motion court denied the request to correct the judgment and sentence to conform to the oral disposition at sentencing. In all other respects, the motion court's judgment is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

17